**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**BEFORE THE HONORABLE ROBERT C. JONES, DISTRICT JUDGE**
**---o0o---**

| | | |
|---|---|---|
| **FERRING B.V.,** | : | |
| | : | |
| **Plaintiff,** | : | **No. 3:11-CV-481-RCJ-VPC** |
| | : | **3:11-CV-485-RCJ-VPC** |
| **-vs-** | : | **3:11-CV-854-RCJ-VPC** |
| | : | **3:12-CV-1941-RCJ-VPC** |
| **WATSON LABORATORIES,** | : | |
| **INC.-FLORIDA, APOTEX, INC.,** | : | **March 5, 2014** |
| **and APOTEX CORP.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**TRANSCRIPT OF MOTION HEARING**

**APPEARANCES:**

**FOR THE PLAINTIFF:**
**MOLLY M. REZAC**
**Attorney at Law**
**Reno, Nevada**

**JAMES B. MONROE, JUSTIN J. HASFORD and PAUL W. BROWNING**
**Attorneys at Law**
**Washington, D.C.**

**FOR DEFENDANT WATSON:**
**MICHAEL D. ROUNDS**
**Attorney at Law**
**Reno, Nevada**

**CHRISTOPHER J. SORENSON**
**Attorney at Law**
**Minneapolis, Minnesota**

**Reported by:**
**Margaret E. Griener, CCR #3, RDR**
**Official Reporter**
**400 South Virginia Street**
**Reno, Nevada 89501**

**(Appearances continue on page 2.)**

**APPEARANCES CONTINUED:**

**FOR DEFENDANT WATSON:** **BRUCE JEFFERSON BOGGS**
**Attorney at Law**
**Alexandria, D.C.**

**FOR DEFENDANT APOTEX:** **JAMES W. BRADSHAW**
**Attorney at Law**
**Reno, Nevada**

**BARRY P. GOLOB and**
**KERRY B. McTIGUE**
**Attorneys at Law**
**Washington, D.C.**

RENO, NEVADA, WEDNESDAY, MARCH 5, 2014, 1:30 P.M.

---o0o---

THE COURT: Thank you, and good afternoon. Please, in Ferring, appearances.

MR. BROWNING: Paul Browning on behalf of Ferring BV.

MR. HASFORD: Justin Hasford, your Honor, on behalf of Ferring BV.

MR. MONROE: James Monroe on behalf of Ferring.

MS. REZAC: Molly Rezac on behalf of Ferring.

MR. SORENSON: Chris Sorenson on behalf of Watson.

MR. BOGGS: Good afternoon, your Honor, Jeff Boggs for Watson.

MR. ROUNDS: Good afternoon, your Honor. Michael Rounds for Watson.

MR. BRADSHAW: James Bradshaw for the Apotex defendants.

MR. McTIGUE: Good afternoon. Kerry McTigue for the Apotex defendants, your Honor.

MR. GOLOB: Barry Golob for the Apotex defendants. Good afternoon, your Honor.

THE COURT: Good afternoon. Thank you.

I have read the pleadings on the various motions

that we have. I'll just give you initial leanings and then let you proceed.

I'm not inclined to grant the motions for reconsideration from Watson, but I am inclined to agree with Apotex that -- you know, it was here in open court, maybe it was a little vague, but it was my understanding they were going to stipulate to seek an amendment.

They would not sell anything under the current ANDA, but that they would get an amendment which clearly took them outside -- clearly outside the parameters of the patent, and therefore, assuming that they do that, they would be entitled to a stipulated dismissal.

It could be pursuant to the stipulation that they proposed, that is, they will not sell, it's okay with me if that's embodied in a much strongly-worded stipulation, but without the findings and conclusions that they have violated the patent.

That seemed to be the course that we were headed towards, and so I would be inclined to agree with their motion that even though you can insist upon a strongly-worded stipulation that tells them exactly where the line is they can't cross, and whether separate from the judgment or otherwise, that if they do that, they are entitled to a stipulated dismissal. So -- or ordered dismissal by me.

Those are my initial leanings, but I need to give

you an opportunity to give further oral input. I'll let you proceed.

MR. GOLOB: Your Honor, in view of that, may we go first? Because it seems that we're going to be a little shorter than that, and we can be dismissed for the day, if possible.

THE COURT: Well, that's okay.

MR. GOLOB: Okay.

THE COURT: Although Watson may want your support, you know.

MR. GOLOB: So, your Honor, as you know, we filed two motions. We filed the emergency motion and the motion to strike.

And the motion to strike was obviously because we believed that we were the prevailing party and didn't -- Ferring should not have filed findings of fact.

But with your Honor's predispositions --

THE COURT: I'm not going to grant the motion to strike, of course.

MR. GOLOB: Okay. So but with the Court's instructions right there, we have actually taken our proposed stipulation that we provided to Ferring and put it in the form of a judgment.

If the Court would like us to hand it up, I can hand copies as well.

THE COURT: No, you don't need to yet. You've shown it to them already.

MR. GOLOB: It's the same as the stipulation before but just has an introductory paragraph that says this is an action for patent infringement brought by Ferring against Apotex and lists the patents, and then it says exactly what it said in the stipulation.

MR. BROWNING: We haven't seen that document, your Honor.

THE COURT: Well, hand it to him, and tell me what the stipulation said.

MR. GOLOB: The stipulation --

THE COURT: In other words, what they obviously want, they want a clear limitation, a bright line for you, Apotex, here's how you can act and here's how you cannot act.

MR. GOLOB: Okay. So what we did, your Honor, is --

THE COURT: In other words, they don't want you to be able to waltz out tomorrow and say that action was dismissed with prejudice and then revise the ANDA again making it violative. That's the limitation that they want.

MR. GOLOB: Right. And so, your Honor, can I hand you up one as well?

THE COURT: Sure, that's okay.

I really don't want to get into specific language

with you. I just want my guideline to be met, and I think probably Ferring understands where I'm coming from so --

MR. GOLOB: Yes, your Honor.

And we filed the amendment, as you know from our emergency motion, with the FDA, and so our specification now contains that --

THE COURT: So it wouldn't be appropriate to say Apotex does not infringe. That's not true. Your ANDA does infringe. That was my finding. So it wouldn't be appropriate to say that you do not infringe.

It would be appropriate to say dismissed with prejudice and incorporating the enclosed stipulation, that is, you agree to file an amended ANDA, and as long as you operate under that amended ANDA, there's -- the action is dismissed with prejudice.

MR. GOLOB: Okay. We can make those minor adjustments.

THE COURT: But it's not fair to ask for a finding that you do not infringe because you do.

MR. GOLOB: Well, but the Court made a finding that we don't infringe under (a), if you recall.

THE COURT: Correct.

MR. GOLOB: Okay. We didn't understand that the Court actually made a finding --

THE COURT: You haven't sold.

MR. GOLOB: No, we have not sold.

THE COURT: Right. So the basis -- and I think everybody agreed that the sole basis as to Apotex was (e). Everybody agreed to that. I think they conceded that.

So there's nothing wrong with just simply saying dismissed with prejudice pursuant to the following stipulation, and either incorporate it by reference, or put it into the judgment, you've agreed to file an amended ANDA as agreed by the parties.

So that they can have something that they can lean on, and they can come back here and say, oh, you amended it again to put it right back into our patent. Judge, you know, enforce that.

MR. GOLOB: Yeah. We wouldn't do that, your Honor, because if the car is working, why would we take it in to get fixed. Doesn't make any sense, right?

THE COURT: It doesn't, but I'm not going to second-guess you three years hence.

MR. GOLOB: Sure.

THE COURT: You've got to give them the right to second-guess you. So put it in writing.

Here's the amended -- as long as an amendment falls within these parameters, you don't have to specify the exact wording and lock yourself into one amended ANDA for all time henceforth, but you do need to commit yourself to an amended

ANDA within the parameters that you agree, it will have a limitation that keeps it outside the patent.

MR. GOLOB: Right. And, your Honor, can we make the -- incorporating the stipulation where the stipulation is under seal? Because we don't want the world to know what we did in our FDA.

THE COURT: Yep.

MR. GOLOB: Okay. So we'll have a judgment that tracks what you're saying --

THE COURT: Pursuant to stipulation --

MR. GOLOB: -- and then we'll --

THE COURT: -- of the parties, the action is dismissed with prejudice.

MR. GOLOB: Okay. I presume we're going to have, still, a lot of fighting about this.

THE COURT: Sure. I'm available by telephone. You don't have to hold a whole new hearing, you can get me on the phone on or off the record.

MR. GOLOB: Can we -- what we'd like to do, your Honor, is -- as you know, we did file that amended specification.

THE COURT: Good.

MR. GOLOB: We filed it with the FDA. We're good to go. We would like to launch tomorrow and still work on this. We've been waiting now -- it's been three weeks.

There's no reason why --

THE COURT: Do you agree their amended ANDA complies with the guideline?

MR. BROWNING: No, your Honor. I'm patiently awaiting my turn, but we don't agree with anything that he's proposing.

THE COURT: Of course not.

MR. BROWNING: It certainly --

THE COURT: But you need to, as long as it complies with what I ordered. So let me hear from you.

MR. BROWNING: That would harm our appellate rights that we -- there was actually no testimony at trial in support of this noninfringement opinion they're offering. In fact, the only testimony was to the contrary.

They didn't say anything about percentages. The only "about" limitation they talked about was time, and so they had absolutely no support in the entire trial record for the position they're advocating now.

THE COURT: So what are we talking about? I thought my guideline was pretty clear that the amendment had to take it outside your patent.

MR. BROWNING: I agree, your Honor.

THE COURT: I'm not buying your expert's variance, et cetera.

MR. BROWNING: I understand, your Honor.

THE COURT: They just have to take it out of the exact parameters of your patent.

MR. BROWNING: Your Honor, the exact parameters uses the term "about." The only testimony at trial was for percentage --

THE COURT: I'm not going to buy -- I've already rejected your expert's analysis of "about" with respect to time.

MR. BROWNING: Yes.

THE COURT: He can do regression analysis on the time factor. I'm not going to --

MR. BROWNING: I understand.

THE COURT: And I'm not going to play games with you on the issue.

MR. BROWNING: No, your Honor. To be clear, I wasn't arguing that point.

THE COURT: Okay.

MR. BROWNING: I understand your Honor's ruling on time, it was very clear to us.

THE COURT: Yeah.

MR. BROWNING: My point is this is percentage released, and they never argued anything on percentage released. There's nothing in the trial record.

There's undivided testimony that it's plus or minus 10 percent on percentage released, and, in fact, their

**30(b)(6) witness conceded that point. They have nothing to point to in support of their current position where they're arguing noninfringement.**

**THE COURT: So how do you want their amended ANDA to read on percentage releases?**

**MR. BROWNING: It would have to be greater than plus or minus 10 percent on that point.**

**THE COURT: Denied. I already told you I was not going to accept your interpretation in the Markman hearing of plus or minus 10 percent.**

**MR. BROWNING: I understand, your Honor.**

**THE COURT: So you need to tell me -- I gave you a guideline during the trial, this would be within the "about" term from a layman's perspective and as judge factual finder, this would not. I gave you that guideline.**

**MR. BROWNING: I understand, your Honor, and I --**

**THE COURT: So you need to tell me, okay, here it is, about -- the amended ANDA at any given time in the future must comply with the following limitations.**

**MR. BROWNING: Yes, your Honor. We --**

**THE COURT: And if it's 72 percent, I'm going to agree with you. If it's 79 percent, I'm not. So I gave you that guideline previously. So don't ask for the moon and the stars, ask for what I told you.**

MR. BROWNING: I understand, your Honor.

And I was just trying to ask what we believe is consistent with the trial record, but I understand your guidance now.

Officially, we -- given the testimony we produced at trial, we need to preserve our appellate rights. I understand that your Honor may enter judgment along these lines, but we can't stipulate --

THE COURT: So what's the problem with their present --

MR. BROWNING: They said 75 percent. In our view, it should be greater than 77 percent for that limitation.

THE COURT: Okay. And that I'm denying.

They said 75 percent?

MR. BROWNING: Yes.

THE COURT: That's okay with me.

MR. BROWNING: I understand your guidance, your Honor. Again, we need to preserve our appellate right, but --

THE COURT: Sure you do.

MR. BROWNING: -- with due respect to this Court, we can't just stipulate and give up, we need to preserve our appellate rights --

THE COURT: No.

MR. BROWNING: -- on that point.

**THE COURT: Okay. So 75 percent, as long as that's in the stipulation, that's okay. I'll enter the judgment dismissing you with prejudice pursuant to your offer of judgment.**

**MR. GOLOB: Yes. And, your Honor, again, if I may, so we already filed -- if you see in our emergency motion --**

**THE COURT: In other words, if he doesn't want to agree with the stipulation, that's okay with me.**

**You're offering judgment, dismissal with prejudice but upon the following conditions, that you will file an amended ANDA that will remain in effect as long as their patent is in effect under the following limitations.**

**MR. GOLOB: Okay. And we have done that already, your Honor. So what I would like to say is that we've already done it in the stipulation.**

**THE COURT: He says you haven't. What else other than the 75 percent?**

**MR. BROWNING: Your Honor, there's a real problem. They told the FDA they don't infringe which your Honor just explained was not the finding at trial. So they've submitted a misleading submission to the FDA.**

**To protect us, we would like the judgment to include a finding that their current ANDA -- it has not been officially amended yet, the FDA has not accepted their**

**submission -- infringes.**

**And then I understand your Honor's guidance is that they can make these amendments and get outside the patents, I understand that --**

**THE COURT: Well, I'm going to deny that request. In other words, I'm not going to make a finding that their present ANDA infringed. We all know that that's my finding, but they've offered judgment. We agree, Judge, we just want to walk out of here, tell us what we can file an amended ANDA for. They've agreed to it.**

**MR. BROWNING: Your Honor, I don't understand that. There's no authority to changing the facts posttrial. We spent three years litigating this case under a certain set of facts, your Honor.**

**THE COURT: Okay. Again, you've preserved your right.**

**MR. BROWNING: I understand, your Honor.**

**THE COURT: Take it up with a kindly appellate judge who will listen to you. I won't. And therefore I'm going to enter the judgment. You just tell me what's unsatisfactory with it.**

**In other words, I'm going to let them off the hook. I'm going to dismiss with prejudice without a finding that their present ANDA -- but based upon an offer of judgment that says they will file an amended ANDA which at a minimum has the**

**following requirements and in effect as long as you have patent rights.**

**MR. BROWNING: I understand, your Honor.**

**If I may, if I may make a couple of other points.**

**THE COURT: What else? Please.**

**MR. BROWNING: The problem is it allows them to benefit from their infringing ANDA which is a real problem for us, that they have -- we understand they stockpiled product that's based on infringing specification. By law they should not be able to do that. That's an infringement on our patent rights.**

**Number two is --**

**THE COURT: Okay. Do you agree that you've made your record now on that point?**

**MR. BROWNING: I hope so, your Honor.**

**THE COURT: Me, too.**

**MR. BROWNING: The other point I want to make, your Honor, is that we have a real problem with -- first of all, we don't know what the FDA is going to do. So I understand your Honor is giving guidance and saying that they have to do such and such, but --**

**THE COURT: In their current amended ANDA, of course, they have to make the same representation, this does not infringe.**

**MR. BROWNING: Yes. And we would like the**

chance to respond to the FDA to point out that there was infringement, and there is a problem, and they're telling you one thing and telling the FDA another.

THE COURT: I'm not going to let you do that. I'm not going to let you keep litigating this issue. I'm going to decide now the amended ANDA does or does not infringe. That's what I'm going to decide.

MR. BROWNING: I understand that, your Honor.

My point is I'd like to clear up the misrepresentation to the FDA; that we have grave concerns that they've told the FDA they're not changing anything.

THE COURT: So you want the FDA to agree with you because you want to be able to present the position that the original ANDA was based upon deception.

MR. BROWNING: No, no, no, no, not at all, your Honor. Your Honor, we want to make sure the FDA knows that they can't revert to what they did in the past because it was infringing.

We also want the FDA to know that they're making a change. They've told the FDA they're not making a change.

THE COURT: What do you care if the FDA knows it --

MR. BROWNING: Because they're --

THE COURT: -- as long as you have it in a stipulated judgment?

MR. BROWNING: Because they're telling the world that a product is identical to ours, and it's not, if they're making this change. If they're truly making this change, their product isn't the same as ours, they're telling the FDA it is, and that's a real concern for us.

THE COURT: You're confusing semantic terms, "identical to ours."

They still have to make the representation to the FDA that it is not infringing so they are expressly representing that it's not identical in patent terms but they certainly do have to -- what's the term of art, functionally equivalent?

MR. BROWNING: Bioequivalent.

MR. GOLOB: Bioequivalent, which it is, your Honor.

MR. BROWNING: That's my concern, is they've told the FDA they're not making any change to their dissolution specifications. That's what they said, we're not making any change. And that's a real concern because if they --

THE COURT: In the amended ANDA?

MR. BROWNING: Yeah, they told the FDA they made no change whatsoever, and they told the FDA that you found that they didn't infringe. Those are false statements. We would like the chance to simply respond to those so that the

**record is clear before the FDA.**

**THE COURT: Again, we're bantering about semantics.**

**If what they're representing is the product as we propose to sell it under the old ANDA, we are making no changes in that product, I agree with them, and you conceded that point at trial.**

**MR. BROWNING: No, no, no.**

**THE COURT: The actual product that they wanted to sell was outside, and that's why I said there's no (a) violation. But the ANDA permitted a violative product under (e). That's the problem I found with Apotex's position.**

**MR. BROWNING: I understand that, your Honor.**

**THE COURT: So you're just talking semantics with me.**

**If you're saying that they're representing that it's the exact same product that they proposed to sell under the old ANDA, it's not a misrepresentation. They're making a correct representation.**

**If you're telling me that they're making a representation that the old ANDA did not infringe, you're right, and they can't make that representation.**

**MR. BROWNING: Well, they made that representation --**

**MR. GOLOB: No, we did not.**

MR. BROWNING: -- and they made representations --

THE COURT: Why do you say that?

MR. BROWNING: Because that's what they submitted --

THE COURT: The only representation they make is that it's bioequivalent.

MR. BROWNING: No, no, no, no, I'm sorry, your Honor. My apologies. It's in their submission to the FDA. They said the Court found they don't fringe.

MR. GOLOB: No.

MR. BROWNING: That's what they say, and it's in black and white in the submission.

THE COURT: Show it to me. He says they don't, you say it is.

MR. GOLOB: Would you like me to read it to you, your Honor?

THE COURT: Sure.

MR. GOLOB: We said here, we said,

"Each of the claims of the patents requires a tranexamic acid dissolution of less than about 70 percent by weight tranexamic acid released at about 45 minutes. A trial was held before the Honorable Judge Jones on January 21 through 30 after which the Court found no basis to conclude that any

of the Apotex's tranexamic acid tablets infringe the asserted claims of the patent. However, the Court was concerned that Apotex's currently-approved dissolution specification was silent regarding the tranexamic acid dissolution at 45 minutes. To alleviate the Court's concern, Apotex is hereby adding an additional specification of not less than 75 percent at 45 minutes" --

THE COURT: I think you ought to make it a little stronger, and as agreed with the Court, as agreed in the court and as embodied in a judgment, Apotex is doing the following.

MR. GOLOB: Can I read -- it may alleviate what the Court just said?

THE COURT: Sure.

MR. GOLOB: We say,

"Please note that Apotex is not changing the approved release limits of Q equals 80 at 60 minutes. The supplement provides for an additional measure of assurance to alleviate the Court's concern that not less than 80 percent Q in 60 minute specification does not reveal the percent dissolution from Apotex's product at 45 minutes. Accordingly, and consistent with the dissolution test data submitted to the FDA and as educed at trial, Apotex is committing to the

FDA to only sell its ANDA product with a dissolution release rate profile of not less than 75 percent in 45 minutes."

So we've committed that to the FDA --

THE COURT: Just make it a little stronger, please. Cite in the application that you are under court order as well. In other words, I will enforce. So I don't want any doubt in FDA's mind that you're at liberty to amend it hereafter.

MR. GOLOB: Okay. May I ask a compromise, your Honor? We've already filed this with the Court, so once the order and stipulation and everything are filed, we will file that with the Court and say here's the direction from the Court as to what we are doing which is consistent with our supplement.

THE COURT: I don't understand your question.

MR. GOLOB: So instead of -- we've already filed this supplement with the FDA. So instead of filing another supplement, once we get the dismissal with prejudice and the judgment, can we file that with the FDA instead of filing a different supplement and say here's what the Court has ordered which we believe is consistent with what we said --

THE COURT: I don't understand your question.

If you're saying can we go ahead and proceed on the current supplement that we've already filed, the answer is no.

Can you proceed on a new supplement that strengthens the language so that FDA is clear that you're operating under a court-enforceable order, the answer is yes, yeah.

So, again, I don't understand the question, but that's my guideline.

MR. GOLOB: Okay. So if we file another supplement that says this earlier supplement is subject to a court's order enforcing this judgment that we must abide by these guidelines, and we will --

THE COURT: Something to that effect.

MR. GOLOB: -- then we can launch at that point?

MR. BROWNING: Your Honor, that addresses --

MR. GOLOB: Hold on, hold on.

THE COURT: I'm not going to answer that until I get his response.

MR. GOLOB: Oh, I'm sorry.

MR. BROWNING: Thank you, your Honor.

MR. GOLOB: Okay.

MR. BROWNING: That does address that part of our concern, thank you, your Honor. We would just like the opportunity to see that. We never saw this before it got submitted, it just got sent in.

THE COURT: Sure.

MR. BROWNING: We would like the chance to see that and just respond to it very briefly at the FDA to just

make sure there's no further misrepresentation before the FDA. It's very important to us, and we think --

THE COURT: No, you're not going to respond before the FDA, you're going to respond with me.

MR. BROWNING: Okay.

THE COURT: On the telephone. I'm not going to hold another hearing in 30 days.

MR. BROWNING: Would you like us to do that before it's submitted to the FDA?

THE COURT: Or you can hold a hearing tomorrow or Friday or Monday or Tuesday.

MR. GOLOB: Your Honor, can we get some set timing here?

THE COURT: Sure.

MR. GOLOB: Because we've waited. So if we get -- as soon as we send it to them, we want their comments within two days.

THE COURT: Okay. That's fair.

MR. BROWNING: Well, it depends on how long they take it to send it to us. If they send it ten days and give us two days, it's not very fair --

MR. GOLOB: Well, whenever --

THE COURT: That's right, he wants it yesterday so let's assume that --

MR. BROWNING: If he does it very quickly, we

can respond in two days, your Honor.

THE COURT: Sure.

MR. GOLOB: And then if they have problems, we'll reach to the Court, but we would like to get this resolved within a maximum of a week so we can get on the market. So -- and then we'll be able to get on the market subject to working out the stipulation --

THE COURT: I'm not saying yes or no, but I will give you immediate hearing to give you the answer.

MR. GOLOB: Okay.

THE COURT: So by telephone call, you can ask -- if you do have further disagreement, you can ask for a hearing tomorrow or Friday or Monday or Tuesday.

MR. GOLOB: Okay. That's all I have then, your Honor, thank you.

THE COURT: Any others that he needs to be aware of?

MR. BROWNING: Your Honor, I hate to tax your patience, but I would like to make briefly the record because I do believe there's no --

THE COURT: I thought you already told me you've made your record.

MR. BROWNING: Okay. Well, then if I've made my record, then I'll leave it at that.

But I just -- we don't believe there's any basis

in law for an adjudication based on evidence submitted posttrial.

THE COURT: Now do you think you've preserved your record?

MR. BROWNING: I hope so, your Honor.

THE COURT: Okay. Good.

MR. BROWNING: Thank you. Thank you.

MR. GOLOB: One more thing, your Honor. If we could also get to timing on this. We'll send them a proposal, and if they can get back to us in this stipulation of dismissal stuff within seven days, and then we'll either call the Court and give you what we did --

THE COURT: Yeah.

MR. GOLOB: -- without having to file motions.

THE COURT: It can certainly be quicker than that.

MR. GOLOB: Okay. Five days?

THE COURT: If you get it to them within a day or two, they should respond within two days, and you can have an immediate hearing.

MR. GOLOB: Thank you very much, your Honor, and that's both the order and the --

THE COURT: Okay.

MR. GOLOB: Thank you.

THE COURT: Watson's motion.

MR. GOLOB: May we be dismissed, your Honor?

THE COURT: If you want to be. But if we rule on something that affects you, it's okay with me.

MR. GOLOB: Okay. You just scared me.

THE COURT: But if I grant Watson's entire motion for reconsideration, you don't care. It's all right. Okay.

MR. BROWNING: Your Honor, I'm sorry, I hate to bring up another issue, but it does relate to Apotex before -- there is another patent case that's pending, and it does relate to the '005 patent, and the stipulation as currently posed doesn't addressed the infringement issues on those claims.

I know it's not before your Honor, but I just wanted to bring it to the parties' attention and your Honor's attention.

THE COURT: Okay.

MR. BROWNING: To the extent the stipulation doesn't address infringement issues, we would --

THE COURT: I don't know how it would work into my mental function or calculation so --

MR. BROWNING: I just -- I agree, your Honor.

THE COURT: Thanks for telling us about it.

MR. BROWNING: I'm just trying to flag it for your attention that we might want to move for preliminary

injunctive relief depending on the nature of the stipulation.

THE COURT: Thank you.

MR. SORENSON: Are you ready?

THE COURT: Your floor.

MR. SORENSON: Your Honor, I understand your guidance. There's a -- I have a feeling a lot of what I'm going to be saying is also making a record, but if you could just bear with me for a moment.

THE COURT: I'll do that.

MR. SORENSON: There has been a very important development that perhaps you're not aware of, and that is that just a few days ago the FDA approved the CVE-0 that was filed by Watson a couple of weeks ago.

THE COURT: What's a CVE-0?

MR. SORENSON: CVE-0 is the Changes Being Effected-0.

THE COURT: Oh, okay.

MR. SORENSON: So it's an amendment to the ANDA that narrows the scope of the Kp range down to 16.5 Kp ceiling with all the rest of it being the same as the evidence was at trial.

We submitted that a couple --

THE COURT: So how can I take that into account without receiving evidence, without -- how can I come up with a whole new judgment based upon, you know, you're trying to

squeeze -- I don't know how I can respond to that or take it into account in the calculus.

MR. SORENSON: Well, your Honor, the timing is relatively unfortunate. We got the approval from the FDA only on March 3rd which was just a couple of days ago.

We filed docket number 497 with your Honor that provided -- that was proposed as a supplement to its combined briefing in support of its motion --

THE COURT: What's the significance of your bringing that to my attention?

MR. SORENSON: The significance of bringing that to your attention, your Honor, I think focuses specifically on the --

THE COURT: Is that you've limited yourself to 16.5 compression?

MR. SORENSON: We have limited ourselves to 16.5 compression, and I think that it's fair, in fact, there's authority for --

THE COURT: Then you want to reargue to me all of the evidence that at 16.5 you're okay.

MR. SORENSON: The two motions that are before you, your Honor -- well, there's actually four motions, some of them, I think, have probably been rendered moot given the passage of time.

But the two motions are first to reconsider the

entry of the injunction, which is the order that changes the approval date of the ANDA to when the patents expire.

The second is, if the Court is inclined not to, or the Court denies the motion for reconsideration, there's also a motion pending for a stay of that order pending our ability to appeal to the federal circuit with respect to the entry of judgment on that particular order.

The 16.5 --

THE COURT: So a stay of judgment would allow you to go ahead and sell.

MR. SORENSON: A stay of judgment would allow us to pursue our appeal to the federal circuit so that we can get --

THE COURT: And you can sell pending the circuit's analysis.

MR. SORENSON: Yes, your Honor.

THE COURT: I have to deny that with all due respect. I understand your argument in the pleadings that there's no harm to them, but there is harm to them. You've cut the legs out from underneath their product's pricing and market.

As long as you produce totally outside my determination on the (e) violation, you're not hurting them. They may cry that you're hurting them, especially if you're representing that we're selling the same product, but you're

not.

If you're selling a product that, by its ANDA approval and specifications, cannot violate the patent, you're not hurting them even though they may cry.

Because let's say, for example, you're selling a pill that really disintegrates right now. It does embody the 650 grams which they found to be beneficial on the max curve, but it's really disintegrating right now, and you just disagree with all those anecdotal findings that there's any substantial difference in side effects.

As long as you don't misrepresent to the public that we are selling the same drug timewise, and it dissipates over a longer period, as long as you don't make that misrepresentation to either the FDA or the public, you just disagree with the fact that there are any side effects statistically measurable, then they can cry all they want, but you're not violating their patent.

But that's not my understanding of what you want to do. You want to ask me to reanalyze or -- forget for a moment the amendment or the approval that you just got, you want to ask for a stay with no injunction while you proceed to sell the very product that I found to be violative, and you don't want me to stay it on the basis there's no harm to them, but there is harm to them, and that's my finding, and I can't give that to you.

You can certainly get your appeal to the circuit, and they can tell you there's no harm, we'll grant a stay of the judgment, but I can't give it.

MR. SORENSON: Well, your Honor, I understand what you're saying, and I think, respectfully, there's a difference between harm to them and irreparable harm that supports the equitable balancing factors for the entry of an injunction.

There's absolutely no evidence before this Court that they have been irreparably harmed. Any harm that has occurred is compensable.

THE COURT: Why isn't there evidence of irreparable harm?

MR. SORENSON: Because they have --

THE COURT: You want us to hold a new trial on the pricing? Why would I do that without also extending that trial to a damages award based upon their expert's and your expert's estimation of the actual damage to the pricing that they must now charge in lieu of the higher price?

MR. SORENSON: If there is damage to the pricing that they must now charge in lieu of the lower price, those are damages that are compensable by the payment of some form of money, of compensation.

Irreparable harm is part of the balancing factors required by --

THE COURT: Not without a huge trial, not without extensive evidence.

No, I just don't buy it. I'm sorry. You'll have to seek your injunction from the appellate court.

MR. SORENSON: All right, your Honor. I understand. I suppose all the briefing that's before your Honor will make my record.

I think that the *EBay* decision from the Supreme Court explicitly said that injunctive relief needs to be granted only upon consideration of the equitable factors that are set forth in the briefing.

THE COURT: Right.

MR. SORENSON: The same is true with respect to the motion to stay pending appeal. There's also the equitable factors that are balanced in there. That's all in our briefing, and I suppose I won't stand here and argue with you about that.

THE COURT: Because I think I've ruled on it.

MR. SORENSON: Okay. The other motions, of course, I suppose are the motion to strike the preliminary injunction request that was in the informal letters that were submitted.

I think in light of the fact that we have a hearing today --

THE COURT: Right.

MR. SORENSON: -- my assumption is --

THE COURT: I'm going to consider all of it.

MR. SORENSON: Okay. All right.

Then also before your Honor is the motion to compel. We asked for them to produce some evidence other than attorney argument that they were irreparably harmed by the launch.

I don't know if you recall, this launch happened 13 months ago, and they did not bring a motion for preliminary injunction at that point in time. There's case law and pretty strong authority that supports the notion that that in and of itself establishes a lack of irreparable harm.

And the approval that the FDA just sent out on Tuesday in relation to the amendment that was filed, it very definitively brings out of the parameters of these patent claims any notion of 271(e) infringement.

And the point of that, your Honor, is then, moving forward from this point in time forward, there is no possibility, the ANDA does not permit in any way a finding of infringement under 271(e) or 271(a).

THE COURT: Thank you so much. Anything further?

MR. SORENSON: Yes, your Honor.

If I could, I would like -- I would like to respectfully ask for a period of 15 days before entry of the judgment so that we can prepare the pleadings necessary to

file with the federal circuit.

THE COURT: Well, I mean, I'm going to have a hard time entering it until next week anyway. Did we agree to an injunction pending ruling by the Court?

MR. BROWNING: We asked for it, your Honor. There has been no ruling on that yet.

THE COURT: Did I give a temporary restraining order agreed to until the ruling? We advanced the trial and the hearing. I thought I did.

MR. BROWNING: No, you didn't, your Honor.

THE COURT: I didn't.

MR. BROWNING: No. We did request it. We renew that.

THE COURT: And they are in selling process now.

MR. BROWNING: Yeah, and we would renew that request. It's very important for us, it's going to actually --

THE COURT: Right. I can't give you that additional time.

I mean, all the time you're allowed to stay -- you know, a patent is given for a certain period of years. On a patented medicine, you can't just go out and prepare a generic that violates and stand up and say it doesn't hurt them, they can get damages. It's just not true.

MR. SORENSON: Well --

THE COURT: So I'm going to deny it.

MR. SORENSON: Okay. Your Honor, then I suppose the next thing to do today, if you want to do this, is to walk through the proposed findings of fact and conclusions of law. Those are also pending before you.

THE COURT: Specific objections, please. Sure.

MR. SORENSON: Sure. Now, the --

MR. BROWNING: Your Honor, I just object to this. They never provided any specific objections to us. They've had over a month now to provide them in writing. They never did.

THE COURT: Did you provide them with specific objections? Did you do it in your motion?

MR. SORENSON: Absolutely we did. Not in our motion, your Honor, we provided our own set of findings of fact and conclusions of law in response to theirs.

You gave 15 days after we were all here last for Ferring to provide findings of fact and conclusions of law. We got 112 pages of findings of fact --

THE COURT: So you didn't provide any objections, but you provided your own.

MR. SORENSON: We provided our own, yes, your Honor, and we objected to their findings of fact and conclusions of law in their entirety.

THE COURT: Have you already made a record on

**that? I'm just not going to adopt your set of findings.**

**Haven't you made record sufficient to tell the appellate court how crazy I am?**

**MR. SORENSON: I believe we have, your Honor. There is -- there is very specific problems with the findings of fact and conclusions of law that Ferring submitted.**

**THE COURT: The most critical ones, please. I'm not going to go through every one, please.**

**MR. SORENSON: The most critical ones, your Honor, are that they completely abandoned any notion or any proof of secondary considerations of nonobviousness at this trial. There was none. They sent Dr. Lukes home and sent their commercial success expert home.**

**THE COURT: Objection denied.**

**MR. SORENSON: The other primary objection to the findings of fact and conclusions of law, your Honor, is that for the method claims and the indirect infringement claims. Again, Dr. Lukes was key to their proof on those claims, and there was no testimony as to --**

**THE COURT: Objection denied.**

**MR. SORENSON: And, finally, on the doctrine of equivalents, your Honor, we believe there was absolutely no evidence supporting a conclusion that there was infringement under the doctrine of equivalents. That also was included in their proposed findings of fact and conclusions of law.**

THE COURT: That one is a little closer, but objection denied.

MR. SORENSON: And then there's one more section in their proposed conclusions of law, your Honor, that asks your Honor to make a finding with respect to the -- actually there's two more.

The first is that there's a small section in their proposed findings of fact and conclusions of law that proffers a new claim construction, and we think that's entirely inappropriate.

THE COURT: And what is that?

MR. SORENSON: They are suggesting that, as a matter of claim construction, the acceptance tables in USP 27 do not apply, that the USP 27 test --

THE COURT: Now, I made that very clear. Did they not comply with my rulings?

I told them that for one purpose the tables did not apply, for another purpose they applied. Is their finding misdrafted?

MR. SORENSON: Their finding is drafted as if it were a claim construction ruling that the patent claims don't refer to acceptance tables, and therefore the patent claims do not require application of the acceptance tables within USP 27.

THE COURT: That seems consistent with the way I

**ruled.**

**MR. SORENSON: I think that's inconsistent with the way that you ruled, your Honor, with due respect. I think the --**

**THE COURT: Well, then, I have to deny your objection.**

**MR. SORENSON: Okay. The other main concern that I have with their proposed findings of fact and conclusions of law, your Honor, is the absence of a specific finding that as a matter of law the ANDA application includes only the ANDA application and no minor amendments or amendments that occurred after the ANDA application.**

**THE COURT: And did they write that into the conclusion of law?**

**MR. SORENSON: That is not in the conclusion of law, and I think that's a very, very important central ruling --**

**THE COURT: That the ANDA application only includes the ANDA? I don't think I ever said that.**

**MR. SORENSON: That the ANDA application as listed in 271(e)(2), you ruled several times, your Honor, that you would not consider minor amendments, that you would not consider amendments not approved by the FDA, and what that means on this record is that only the ANDA application, the initial ANDA application, and nothing else was considered.**

THE COURT: No, it also includes major amendments, right?

MR. SORENSON: There were no major amendments. There were no major amendments. Every amendment has been a minor amendment.

This latest one that we discussed this morning is the CVE-0, it's a supplement to the ANDA, and it was actually approved by the FDA.

THE COURT: I don't know why I need that additional conclusion in here. I think what I did was pretty clear on the record. You can quote it right off the transcript.

MR. SORENSON: I agree, and I think quoting it off the transcript is probably appropriate.

Their summary of your ruling on that omits that entire line of reasoning. Their summary of your ruling on that just simply concludes that 271(e)(2) infringement has been found and that 271(a) infringement has been found. There's no mention of --

THE COURT: That's enough, isn't it? You can cite to the federal circuit the transcript that says this was the basis for that finding and it's in error.

MR. SORENSON: Okay. All right. I think that's the end of my list, your Honor, at least for purposes of making my record. Thank you for your patience.

**THE COURT: Okay.**

**MR. SORENSON: You know, I should say, too, by the way, thank you so much for all of the work. This has been a long process, I understand that.**

**THE COURT: Absolutely, and I appreciate all the effort on both sides. It's a difficult proceeding for each of you.**

**MR. SORENSON: And the transcripts have been outstanding.**

**THE COURT: Thank you.**

**MR. SORENSON: Thank you so much, Madam Court Reporter.**

**THE COURT: Anything else?**

**MR. BROWNING: Your Honor, I would just like to -- just very briefly, just to make the record, we do disagree with their arguments concerning *EBay,* and it's in our briefing.**

**And just a question for your Honor. Was your Honor intending to issue a temporary restraining order against them today, or is that going to come with the judgment?**

**THE COURT: I previously said with the judgment, but if they are proceeding to sell -- let's enter the judgment. Is it ready now, and does it only pertain to Watson?**

**MR. BROWNING: The judgment that we wrote up**

does have Apotex in it, but those paragraphs can be cut out.

THE COURT: Okay. You cut them out. Don't make me do it. Okay?

MR. BROWNING: We'll cut them out. Of course, your Honor. We'll cut them out.

THE COURT: You cut them out and give to me immediately the new judgment, and I'll enter it.

MR. BROWNING: We'll do so, your Honor.

THE COURT: Not as to Apotex.

MR. BROWNING: We'll do so, your Honor.

THE COURT: And then they can immediately file their notice of appeal and seek a -- I'm telling them here on the record I won't give you a stay so you've got a basis to present it in the first instance to the federal circuit.

MR. SORENSON: Okay. For the record, I just heard temporary restraining order, that's Rule 65, and Rule 65 very specifically requires a balancing of the equities here.

THE COURT: Right. We're not doing Rule 65.

This is the permanent injunction resulting in the judgment, and the judgment as you will propose it contains the injunction, correct?

MR. BROWNING: Yes, your Honor.

THE COURT: That's what we're talking about.

MR. SORENSON: Okay. And, your Honor, that injunction as they've proposed it is extraordinarily broad.

That injunction as they've proposed it, you know, precludes the continuing sale of noninfringing products so I'll just object on that basis.

The motion that we filed, I'm assuming that I know what your thinking is on this, but we had proposed an alternative scope of that injunction to preclude us from manufacturing anything that was at a 17 Kp hardness level. That's an alternative scope of the proposed injunction that we proposed in the briefing as well.

THE COURT: I don't know how -- I have to reject that because I don't know how I would monitor that without looking at each of the pills you sell. So --

MR. SORENSON: All right.

THE COURT: Okay.

MR. SORENSON: Thank you.

MR. GOLOB: One quick housekeeping thing, your Honor, if I may.

THE COURT: You're offering to clean the carpets. Go ahead.

MR. GOLOB: Since you denied our motion to strike and to preserve the appeal, once we get the stipulation and the judgment done, can we have 14 days to file comments, objections and conclusions so that -- to preserve for appeal? Because they're going to appeal obviously.

THE COURT: Yes, as long as you don't sell.

**MR. GOLOB: I'm confused, your Honor.**

**THE COURT: You do want to sell. You want to sell --**

**MR. GOLOB: Yeah, we're selling. Yeah. But I'm saying once we get the judgment and stipulation, as you said --**

**THE COURT: As long as you don't sell until the judgment is entered, just make sure that we get the judgment entered right away so that you can proceed to sell.**

**MR. BROWNING: And, your Honor, with respect, we believe that they would need FDA approval of the change before they could sell. They don't have FDA approval of any change yet. They would need to actually change their ANDA before they could --**

**THE COURT: They may proceed immediately to get FDA approval.**

**MR. BROWNING: Yes, your Honor, I understand that.**

**THE COURT: I just don't want them to sell until the judgment is entered.**

**MR. BROWNING: I agree, your Honor. My point is that until they've amended their ANDA, their ANDA would still be fringing, and it's not amended --**

**THE COURT: He said he's going to amend it immediately.**

MR. BROWNING: I know, but it's not amended until the FDA says it is. The FDA has to approve that.

THE COURT: He said he's going to file it immediately.

MR. BROWNING: I understand, your Honor, but the FDA doesn't approve immediately. It takes them a little bit of time.

THE COURT: I understand that, too, and you've said it three times.

MR. BROWNING: Okay. I'm sorry, your Honor, I apologize.

THE COURT: I got it the first time.

MR. GOLOB: Okay. Thank you, your Honor.

THE COURT: Thank you so much. What else?

MR. McTIGUE: I just have to -- I have to respond to that, your Honor.

We will do what your Honor has asked and specifically instruct the FDA that it's been ordered by court, but what we have submitted, number one, is not a misrepresentation to the FDA.

But, number two, the approval, the acknowledgement from the FDA, is in, and we will do an additional filing with the FDA for that. But we need nothing else from the FDA to be bound by that specification that your Honor has asked for.

We understand your Honor's guidance, though, and

we're going to add to the FDA submission with additional guidance from the Court specifically as you mentioned here.

But with that additional information to the FDA, we think at that point we're -- we're prepared to launch, but we will seek 14 days to object to their findings of fact and conclusions of law just so we can cover the record, your Honor.

THE COURT: I don't know what you said, but as long as you're not telling me that you're going to sell until the judgment is entered, I'm okay with it.

MR. McTIGUE: Fair enough. Thank you, your Honor.

THE COURT: Okay. Thank you, folks. Thanks for your time.

MR. BROWNING: Thank you, your Honor.

-o0o-

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/Margaret E. Griener 3/6/2014
Margaret E. Griener, CCR #3, RDR
Official Reporter

**'**

**'005** [1] - 27:11

**/**

**/s/Margaret** [1] - 46:20

**1**

**10** [3] - 11:25, 12:7, 12:10
**112** [1] - 36:19
**13** [1] - 34:8
**14** [2] - 43:22, 46:5
**15** [2] - 34:24, 36:17
**16.5** [5] - 28:19, 29:15, 29:16, 29:20, 30:8
**17** [1] - 43:7
**1:30** [1] - 3:1

**2**

**2** [1] - 1:24
**2014** [2] - 1:7, 3:1
**21** [1] - 20:24
**27** [3] - 38:13, 38:14, 38:24
**271(a** [1] - 40:18
**271(a)** [1] - 34:19
**271(e** [2] - 34:15, 34:19
**271(e)(2** [2] - 39:21, 40:17

**3**

**3** [2] - 1:22, 46:20
**3/6/2014** [1] - 46:20
**30** [2] - 20:24, 24:7
**30(b)(6** [1] - 12:1
**3:11-CV-481-RCJ-VPC** [1] - 1:5
**3:11-CV-485-RCJ-VPC** [1] - 1:5
**3:11-CV-854-RCJ-VPC** [1] - 1:6
**3:12-CV-1941-RCJ-VPC** [1] - 1:6
**3rd** [1] - 29:5

**4**

**400** [1] - 1:23
**45** [5] - 20:23, 21:5, 21:8, 21:23, 22:3
**497** [1] - 29:6

**5**

**5** [2] - 1:7, 3:1

**6**

**60** [2] - 21:18, 21:21
**65** [3] - 42:16, 42:18
**650** [1] - 31:7

**7**

**70** [1] - 20:22
**72** [1] - 12:22
**75** [6] - 13:11, 13:15, 14:1, 14:18, 21:8, 22:2
**77** [1] - 13:12
**79** [1] - 12:23

**8**

**80** [2] - 21:18, 21:21
**89501** [1] - 1:23

**A**

**abandoned** [1] - 37:10
**abide** [1] - 23:8
**ability** [1] - 30:5
**able** [4] - 6:19, 16:10, 17:13, 25:6
**above-entitled** [1] - 46:19
**absence** [1] - 39:9
**absolutely** [5] - 10:17, 32:9, 36:14, 37:22, 41:5
**accept** [1] - 12:9
**acceptance** [3] - 38:13, 38:22, 38:23
**accepted** [1] - 14:25
**accordingly** [1] - 21:23
**account** [2] - 28:23, 29:2
**acid** [4] - 20:21, 20:22, 21:1, 21:5
**acknowledgement** [1] - 45:21
**act** [2] - 6:15
**action** [4] - 6:5, 6:19, 7:14, 9:12
**actual** [2] - 19:9, 32:18
**add** [1] - 46:1
**adding** [1] - 21:7
**additional** [7] - 21:7, 21:19, 35:19, 40:10, 45:22, 46:1, 46:3
**address** [2] - 23:19, 27:19
**addressed** [1] - 27:12
**addresses** [1] - 23:12
**adjudication** [1] - 26:1
**adjustments** [1] - 7:17
**adopt** [1] - 37:1
**advanced** [1] - 35:8
**advocating** [1] - 10:18
**affects** [1] - 27:3
**afternoon** [6] - 3:4, 3:14, 3:16, 3:20, 3:23, 3:24
**ago** [4] - 28:12, 28:13, 29:5, 34:8
**agree** [17] - 4:4, 4:19, 7:13, 9:1, 10:2, 10:5, 10:22, 12:23, 14:9, 15:8, 16:13, 17:12, 19:6, 27:22, 35:3, 40:13, 44:21
**agreed** [8] - 8:3, 8:4, 8:8, 8:9, 15:10, 21:10, 35:8
**ahead** [3] - 22:24, 30:10, 43:19
**Alexandria** [1] - 2:4
**alleviate** [3] - 21:6, 21:13, 21:20
**allow** [2] - 30:9, 30:11
**allowed** [1] - 35:20
**allows** [1] - 16:6
**alternative** [2] - 43:6, 43:8
**amend** [2] - 22:8, 44:24
**amended** [21] - 7:13, 7:14, 8:8, 8:11, 8:22, 8:24, 8:25, 9:20, 10:2, 12:4, 12:19, 14:12, 14:25, 15:10, 15:25, 16:22, 17:6, 18:21, 44:22, 44:23, 45:1
**amendment** [10] - 4:7, 4:9, 7:4, 8:22, 10:20, 28:18, 31:20, 34:13, 40:4, 40:5
**amendments** [8] - 15:3, 39:11, 39:12, 39:22, 39:23, 40:2, 40:3, 40:4
**analysis** [3] - 11:7, 11:10, 30:15
**ANDA** [43] - 4:8, 6:20, 7:8, 7:13, 7:14, 8:8, 8:24, 9:1, 10:2, 12:5, 12:19, 14:12, 14:24, 15:7, 15:10, 15:24, 15:25, 16:7, 16:22, 17:6, 17:14, 18:21, 19:5, 19:11, 19:18, 19:21, 22:1, 28:18, 30:2, 31:2, 34:18, 39:10, 39:11, 39:12, 39:18, 39:19, 39:20, 39:24, 39:25, 40:7, 44:13, 44:22
**anecdotal** [1] - 31:9
**answer** [4] - 22:25, 23:3, 23:14, 25:9
**anyway** [1] - 35:3
**apologies** [1] - 20:9
**apologize** [1] - 45:11
**APOTEX** [3] - 1:7, 1:8, 2:6
**Apotex** [15] - 3:18, 3:21, 3:22, 4:5, 6:6, 6:15, 7:8, 8:3, 21:6, 21:11, 21:17, 21:25, 27:9, 42:1, 42:9
**Apotex's** [4] - 19:12, 21:1, 21:3, 21:22
**appeal** [8] - 30:6, 30:12, 32:1, 33:14, 42:12, 43:21, 43:23, 43:24
**APPEARANCES** [2] - 1:12, 2:1
**Appearances** [1] - 1:24
**appearances** [1] - 3:5
**appellate** [7] - 10:11, 13:6, 13:19, 13:23, 15:18, 33:4, 37:3
**application** [9] - 22:6, 38:23, 39:10, 39:11, 39:12, 39:18, 39:20, 39:24, 39:25
**applied** [1] - 38:18
**apply** [2] - 38:14, 38:18
**appreciate** [1] - 41:5
**appropriate** [4] - 7:7, 7:9, 7:11, 40:14
**approval** [9] - 29:4, 30:2, 31:3, 31:20, 34:12, 44:11, 44:12, 44:16, 45:21
**approve** [2] - 45:2, 45:6
**approved** [5] - 21:3, 21:18, 28:12, 39:23, 40:8
**argue** [1] - 33:16
**argued** [1] - 11:22
**arguing** [2] - 11:16, 12:3
**argument** [2] - 30:18, 34:6
**arguments** [1] - 41:16
**art** [1] - 18:11
**asserted** [1] - 21:2
**assume** [1] - 24:24
**assuming** [2] - 4:11, 43:4
**assumption** [1] - 34:1
**assurance** [1] - 21:20
**attention** [5] - 27:15, 27:16, 27:25, 29:10, 29:12
**Attorney** [5] - 1:13, 1:18, 1:20, 2:3, 2:6
**attorney** [1] - 34:5
**Attorneys** [2] - 1:16, 2:9
**authority** [3] - 15:12, 29:18, 34:10
**available** [1] - 9:16
**awaiting** [1] - 10:5
**award** [1] - 32:17
**aware** [2] - 25:16, 28:11

**B**

**B.V** [1] - 1:4
**balanced** [1] - 33:15
**balancing** [3] - 32:7, 32:24, 42:17
**bantering** [1] - 19:2
**BARRY** [1] - 2:8
**Barry** [1] - 3:22
**based** [6] - 15:24, 16:9, 17:14, 26:1, 28:25, 32:17
**basis** [8] - 8:2, 8:3, 20:25, 25:25, 31:23, 40:22, 42:13, 43:3
**bear** [1] - 28:8
**BEFORE** [1] - 1:2
**behalf** [5] - 3:6, 3:9, 3:10, 3:11, 3:12
**beneficial** [1] - 31:7
**benefit** [1] - 16:7
**between** [1] - 32:6
**bioequivalent** [3] - 18:13, 18:14, 20:7
**bit** [1] - 45:6
**black** [1] - 20:13
**BOGGS** [2] - 2:3, 3:14
**Boggs** [1] - 3:15
**bound** [1] - 45:24
**BRADSHAW** [2] - 2:6, 3:18
**Bradshaw** [1] - 3:18
**briefing** [6] - 29:8, 33:6, 33:11, 33:16, 41:17, 43:9
**briefly** [3] - 23:25, 25:19, 41:15

**bright** [1] - 6:14
**bring** [3] - 27:9, 27:15, 34:8
**bringing** [2] - 29:10, 29:11
**brings** [1] - 34:14
**broad** [1] - 42:25
**brought** [1] - 6:5
**BROWNING** [80] - 1:15, 3:6, 6:8, 10:4, 10:8, 10:11, 10:22, 10:25, 11:3, 11:9, 11:12, 11:15, 11:18, 11:21, 12:6, 12:11, 12:16, 12:21, 13:1, 13:11, 13:16, 13:18, 13:21, 13:25, 14:19, 15:11, 15:17, 16:3, 16:6, 16:15, 16:17, 16:25, 17:8, 17:15, 17:23, 18:1, 18:13, 18:16, 18:22, 19:8, 19:13, 19:23, 20:1, 20:4, 20:8, 20:12, 23:12, 23:17, 23:19, 23:24, 24:5, 24:8, 24:19, 24:25, 25:18, 25:23, 26:5, 26:7, 27:8, 27:18, 27:22, 27:24, 35:5, 35:10, 35:12, 35:15, 36:8, 41:14, 41:25, 42:4, 42:8, 42:10, 42:22, 44:10, 44:17, 44:21, 45:1, 45:5, 45:10, 46:15
**Browning** [1] - 3:6
**BRUCE** [1] - 2:3
**buy** [2] - 11:6, 33:3
**buying** [1] - 10:23
**BV** [2] - 3:7, 3:9

## C

**calculation** [1] - 27:21
**calculus** [1] - 29:2
**cannot** [2] - 6:15, 31:3
**car** [1] - 8:15
**care** [2] - 17:21, 27:6
**carpets** [1] - 43:19
**case** [3] - 15:13, 27:10, 34:9
**CCR** [2] - 1:22, 46:20
**ceiling** [1] - 28:19
**central** [1] - 39:16
**certain** [2] - 15:13, 35:21
**certainly** [4] - 10:8, 18:11, 26:15, 32:1
**certify** [1] - 46:18
**cetera** [1] - 10:24
**chance** [3] - 17:1, 18:25, 23:24
**change** [10] - 17:20, 18:3, 18:17, 18:19, 18:23, 44:11, 44:12, 44:13
**Changes** [1] - 28:15
**changes** [2] - 19:6, 30:1
**changing** [3] - 15:12, 17:11, 21:17
**charge** [2] - 32:19, 32:21
**Chris** [1] - 3:12
**CHRISTOPHER** [1] - 1:20
**circuit** [6] - 30:6, 30:12, 32:1, 35:1, 40:21, 42:14
**circuit's** [1] - 30:15
**cite** [2] - 22:6, 40:21
**claim** [3] - 38:9, 38:13, 38:21
**claims** [9] - 20:20, 21:2, 27:13, 34:15, 37:17, 37:18, 37:19, 38:21, 38:22
**clean** [1] - 43:18
**clear** [9] - 6:14, 10:20, 11:15, 11:19, 17:9, 19:1, 23:2, 38:15, 40:11
**clearly** [2] - 4:9, 4:10
**closer** [1] - 38:1
**combined** [1] - 29:7
**coming** [1] - 7:2
**comments** [2] - 24:16, 43:22
**commercial** [1] - 37:13
**commit** [1] - 8:25
**committed** [1] - 22:4
**committing** [1] - 21:25
**compel** [1] - 34:4
**compensable** [2] - 32:11, 32:22
**compensation** [1] - 32:23
**completely** [1] - 37:10
**complies** [2] - 10:3, 10:10
**comply** [2] - 12:20, 38:16
**compression** [2] - 29:15, 29:17
**compromise** [1] - 22:10
**conceded** [3] - 8:4, 12:1, 19:6
**concern** [7] - 18:5, 18:16, 18:19, 21:6, 21:20, 23:20, 39:7
**concerned** [1] - 21:3
**concerning** [1] - 41:16
**concerns** [1] - 17:10
**conclude** [1] - 20:25
**concludes** [1] - 40:17
**conclusion** [4] - 37:23, 39:14, 39:15, 40:10
**conclusions** [13] - 4:16, 36:4, 36:16, 36:18, 36:24, 37:6, 37:16, 37:25, 38:4, 38:8, 39:9, 43:23, 46:6
**conditions** [1] - 14:11
**confused** [1] - 44:1
**confusing** [1] - 18:6
**consider** [3] - 34:2, 39:22, 39:23
**consideration** [1] - 33:10
**considerations** [1] - 37:11
**considered** [1] - 39:25
**consistent** [5] - 13:3, 21:23, 22:14, 22:22, 38:25
**construction** [3] - 38:9, 38:13, 38:21
**contains** [2] - 7:6, 42:20
**continue** [1] - 1:24
**CONTINUED** [1] - 2:1
**continuing** [1] - 43:2
**contrary** [1] - 10:14
**copies** [1] - 5:25
**CORP** [1] - 1:8
**correct** [4] - 7:22, 19:19, 42:21, 46:18
**couple** [4] - 16:4, 28:13, 28:22, 29:5
**course** [6] - 4:18, 5:19, 10:7, 16:23, 33:20, 42:4
**COURT** [167] - 1:1, 3:4, 3:24, 5:7, 5:9, 5:18, 6:1, 6:10, 6:13, 6:18, 6:24, 7:7, 7:18, 7:22, 7:25, 8:2, 8:17, 8:20, 9:7, 9:10, 9:12, 9:16, 9:22, 10:2, 10:7, 10:9, 10:19, 10:23, 11:1, 11:6, 11:10, 11:13, 11:17, 11:20, 12:4, 12:8, 12:12, 12:18, 12:22, 13:9, 13:14, 13:17, 13:20, 13:24, 14:1, 14:8, 14:17, 15:5, 15:15, 15:18, 16:5, 16:13, 16:16, 16:22, 17:4, 17:12, 17:21, 17:24, 18:6, 18:21, 19:2, 19:9, 19:14, 20:3, 20:6, 20:14, 20:18, 21:9, 21:15, 22:5, 22:16, 22:23, 23:10, 23:14, 23:23, 24:3, 24:6, 24:10, 24:14, 24:18, 24:23, 25:2, 25:8, 25:11, 25:16, 25:21, 26:3, 26:6, 26:13, 26:15, 26:18, 26:23, 26:25, 27:2, 27:5, 27:17, 27:20, 27:23, 28:2, 28:4, 28:9, 28:14, 28:17, 28:23, 29:9, 29:14, 29:19, 30:9, 30:14, 30:17, 32:12, 32:15, 33:1, 33:12, 33:18, 33:25, 34:2, 34:20, 35:2, 35:7, 35:11, 35:14, 35:18, 36:1, 36:6, 36:12, 36:20, 36:25, 37:7, 37:14, 37:20, 38:1, 38:11, 38:15, 38:25, 39:5, 39:13, 39:18, 40:1, 40:9, 40:20, 41:1, 41:5, 41:10, 41:13, 41:21, 42:2, 42:6, 42:9, 42:11, 42:18, 42:23, 43:10, 43:14, 43:18, 43:25, 44:2, 44:7, 44:15, 44:19, 44:24, 45:3, 45:8, 45:12, 45:14, 46:8, 46:13
**court** [7] - 4:5, 21:11, 22:6, 23:3, 33:4, 37:3, 45:18
**Court** [22] - 5:24, 7:20, 7:24, 13:22, 20:10, 20:25, 21:2, 21:10, 21:14, 22:11, 22:13, 22:14, 22:21, 25:4, 26:12, 30:3, 30:4, 32:9, 33:9, 35:4, 41:11, 46:2
**court's** [1] - 23:8
**Court's** [3] - 5:20, 21:6, 21:20
**court-enforceable** [1] - 23:3
**cover** [1] - 46:6
**crazy** [1] - 37:3
**critical** [2] - 37:7, 37:9
**cross** [1] - 4:22
**cry** [3] - 30:24, 31:4, 31:16
**current** [5] - 4:8, 12:2, 14:24, 16:22, 22:25
**currently-approved** [1] - 21:3
**curve** [1] - 31:7
**cut** [6] - 30:20, 42:1, 42:2, 42:4, 42:5, 42:6
**CVE-0** [4] - 28:12, 28:14, 28:15, 40:7

## D

**D.C** [3] - 1:16, 2:4, 2:10
**damage** [2] - 32:18, 32:20
**damages** [3] - 32:17, 32:22, 35:24
**data** [1] - 21:24
**date** [1] - 30:2
**days** [14] - 24:7, 24:17, 24:20, 24:21, 25:1, 26:11, 26:17, 26:19, 28:12, 29:5, 34:24, 36:17, 43:22, 46:5
**deception** [1] - 17:14
**decide** [2] - 17:6, 17:7
**decision** [1] - 33:8
**DEFENDANT** [3] - 1:18, 2:3, 2:6
**defendants** [3] - 3:19, 3:21, 3:23
**Defendants** [1] - 1:9
**definitively** [1] - 34:14
**denied** [5] - 12:8, 37:14, 37:20, 38:2, 43:20
**denies** [1] - 30:4
**deny** [4] - 15:5, 30:17, 36:1, 39:5
**denying** [1] - 13:14
**determination** [1] - 30:23
**development** [1] - 28:11
**difference** [2] - 31:10, 32:6
**different** [1] - 22:21
**difficult** [1] - 41:6
**direction** [1] - 22:13
**disagree** [3] - 31:9, 31:15, 41:16
**disagreement** [1] - 25:12

**discussed** [1] - 40:6
**disintegrates** [1] - 31:6
**disintegrating** [1] - 31:8
**dismiss** [1] - 15:23
**dismissal** [6] - 4:12, 4:24, 14:10, 22:19, 26:11
**dismissed** [7] - 5:5, 6:20, 7:11, 7:14, 8:6, 9:13, 27:1
**dismissing** [1] - 14:3
**dissipates** [1] - 31:12
**dissolution** [7] - 18:18, 20:21, 21:4, 21:5, 21:22, 21:24, 22:1
**DISTRICT** [3] - 1:1, 1:1, 1:2
**docket** [1] - 29:6
**doctrine** [2] - 37:21, 37:24
**document** [1] - 6:8
**done** [3] - 14:14, 14:16, 43:22
**doubt** [1] - 22:8
**down** [1] - 28:19
**Dr** [2] - 37:12, 37:18
**drafted** [1] - 38:20
**drug** [1] - 31:12
**due** [3] - 13:21, 30:17, 39:3
**during** [1] - 12:13

## E

**e)** [2] - 8:3, 19:12
**EBay** [2] - 33:8, 41:16
**educed** [1] - 21:25
**effect** [4] - 14:12, 14:13, 16:1, 23:10
**Effected-0** [1] - 28:16
**effects** [2] - 31:10, 31:15
**effort** [1] - 41:6
**either** [3] - 8:7, 26:11, 31:14
**embodied** [2] - 4:15, 21:11
**embody** [1] - 31:6
**emergency** [3] - 5:12, 7:5, 14:6
**enclosed** [1] - 7:12
**end** [1] - 40:24
**enforce** [2] - 8:13, 22:7
**enforceable** [1] - 23:3
**enforcing** [1] - 23:8
**enter** [5] - 13:7, 14:2, 15:20, 41:22, 42:7
**entered** [4] - 44:8, 44:9, 44:20, 46:10
**entering** [1] - 35:3
**entire** [3] - 10:17, 27:5, 40:16
**entirely** [1] - 38:9
**entirety** [1] - 36:24
**entitled** [3] - 4:11, 4:23, 46:19
**entry** [4] - 30:1, 30:6, 32:7, 34:24
**equals** [1] - 21:18
**equitable** [3] - 32:7, 33:10, 33:14
**equities** [1] - 42:17
**equivalent** [1] - 18:12
**equivalents** [2] - 37:22, 37:24
**error** [1] - 40:22
**especially** [1] - 30:24
**establishes** [1] - 34:11
**estimation** [1] - 32:18
**et** [1] - 10:24
**evidence** [9] - 26:1, 28:20, 28:24, 29:20, 32:9, 32:12, 33:2, 34:5, 37:23
**exact** [4] - 8:23, 11:2, 11:3, 19:17
**exactly** [2] - 4:21, 6:6
**example** [1] - 31:5
**expert** [1] - 37:13
**expert's** [4] - 10:23, 11:7, 32:17, 32:18
**expire** [1] - 30:2
**explained** [1] - 14:21
**explicitly** [1] - 33:9
**expressly** [1] - 18:9
**extending** [1] - 32:16
**extensive** [1] - 33:2
**extent** [1] - 27:18
**extraordinarily** [1] - 42:25

## F

**fact** [17] - 5:16, 10:14, 11:25, 29:17, 31:15, 33:23, 36:4, 36:16, 36:18, 36:19, 36:23, 37:6, 37:16, 37:25, 38:8, 39:8, 46:5
**factor** [1] - 11:11
**factors** [4] - 32:7, 32:24, 33:10, 33:15
**facts** [2] - 15:12, 15:14
**factual** [1] - 12:14
**fair** [5] - 7:18, 24:18, 24:21, 29:17, 46:11
**falls** [1] - 8:22
**false** [1] - 18:24
**FDA** [52] - 7:5, 9:6, 9:23, 14:20, 14:22, 14:25, 16:19, 17:1, 17:3, 17:10, 17:11, 17:12, 17:16, 17:19, 17:20, 17:21, 18:4, 18:9, 18:17, 18:22, 18:23, 19:1, 20:9, 21:24, 22:1, 22:4, 22:18, 22:20, 23:2, 23:25, 24:1, 24:4, 24:9, 28:12, 29:4, 31:14, 34:12, 39:23, 40:8, 44:11, 44:12, 44:16, 45:2, 45:6, 45:18, 45:20, 45:22, 45:23, 46:1, 46:3
**FDA's** [1] - 22:8
**federal** [5] - 30:6, 30:12, 35:1, 40:21, 42:14
**Ferring** [11] - 3:5, 3:7, 3:9, 3:10, 3:11, 5:16, 5:22, 6:5, 7:2, 36:18, 37:6
**FERRING** [1] - 1:4
**few** [1] - 28:12
**fighting** [1] - 9:15
**file** [14] - 7:13, 8:8, 9:20, 14:11, 15:9, 15:25, 22:12, 22:20, 23:6, 26:14, 35:1, 42:11, 43:22, 45:3
**filed** [14] - 5:12, 5:16, 7:4, 9:23, 14:6, 22:11, 22:12, 22:17, 22:25, 28:12, 29:6, 34:13, 43:4
**filing** [3] - 22:18, 22:20, 45:22
**finally** [1] - 37:21
**finder** [1] - 12:14
**findings** [15] - 4:16, 5:16, 31:9, 36:4, 36:15, 36:18, 36:19, 36:23, 37:1, 37:5, 37:16, 37:25, 38:8, 39:8, 46:5
**first** [6] - 5:4, 16:18, 29:25, 38:7, 42:14, 45:12
**five** [1] - 26:17
**fixed** [1] - 8:16
**flag** [1] - 27:24
**floor** [1] - 28:4
**focuses** [1] - 29:12
**folks** [1] - 46:13
**following** [6] - 8:6, 12:20, 14:11, 14:13, 16:1, 21:12
**FOR** [4] - 1:13, 1:18, 2:3, 2:6
**foregoing** [1] - 46:18
**forget** [1] - 31:19
**form** [2] - 5:22, 32:22
**forth** [1] - 33:11
**forward** [2] - 34:17
**four** [1] - 29:22
**Friday** [2] - 24:11, 25:13
**fringe** [1] - 20:10
**fringing** [1] - 44:23
**function** [1] - 27:21
**functionally** [1] - 18:11
**future** [1] - 12:20

## G

**games** [1] - 11:13
**generic** [1] - 35:22
**given** [4] - 12:19, 13:5, 29:23, 35:21
**GOLOB** [57] - 2:8, 3:22, 5:3, 5:8, 5:11, 5:20, 6:3, 6:12, 6:16, 6:22, 7:3, 7:16, 7:20, 7:23, 8:1, 8:14, 8:19, 9:3, 9:8, 9:11, 9:14, 9:19, 9:23, 14:5, 14:14, 18:14, 19:25, 20:11, 20:16, 20:19, 21:13, 21:16, 22:10, 22:17, 23:6, 23:11, 23:13, 23:16, 23:18, 24:12, 24:15, 24:22, 25:3, 25:10, 25:14, 26:8, 26:14, 26:17, 26:21, 26:24, 27:1, 27:4, 43:16, 43:20, 44:1, 44:4, 45:13
**Golob** [1] - 3:22
**grams** [1] - 31:7
**grant** [4] - 4:3, 5:18, 27:5, 32:2
**granted** [1] - 33:10
**grave** [1] - 17:10
**greater** [2] - 12:6, 13:12
**Griener** [3] - 1:22, 46:20, 46:20
**guess** [2] - 8:18, 8:21
**guidance** [7] - 13:4, 13:18, 15:2, 16:20, 28:6, 45:25, 46:2
**guideline** [7] - 7:1, 10:3, 10:20, 12:13, 12:15, 12:24, 23:5
**guidelines** [1] - 23:9

## H

**hand** [4] - 5:24, 6:10, 6:23
**hard** [1] - 35:3
**hardness** [1] - 43:7
**harm** [12] - 10:11, 30:19, 31:23, 31:24, 32:2, 32:6, 32:10, 32:13, 32:24, 34:11
**harmed** [2] - 32:10, 34:6
**Hasford** [1] - 3:8
**HASFORD** [2] - 1:15, 3:8
**hate** [2] - 25:18, 27:8
**headed** [1] - 4:18
**hear** [1] - 10:10
**heard** [1] - 42:16
**HEARING** [1] - 1:11
**hearing** [9] - 9:17, 12:9, 24:7, 24:10, 25:9, 25:12, 26:20, 33:23, 35:9
**held** [1] - 20:23
**hence** [1] - 8:18
**henceforth** [1] - 8:25
**hereafter** [1] - 22:9
**hereby** [1] - 21:6
**higher** [1] - 32:19
**hold** [6] - 9:17, 23:13, 24:7, 24:10, 32:15
**home** [2] - 37:12, 37:13
**Honor** [108] - 3:8, 3:14, 3:16, 3:21, 3:23, 5:3, 5:11, 6:9, 6:16, 6:22, 7:3, 8:15, 9:3, 9:20, 10:4, 10:22, 10:25, 11:3, 11:15, 12:11, 12:16, 12:21, 13:1, 13:7, 13:19, 14:5, 14:15, 14:19, 14:21, 15:11, 15:14, 15:17, 16:3, 16:15, 16:18, 16:20, 17:8, 17:16, 18:15, 19:13, 20:9, 20:17, 22:11, 23:12, 23:17, 23:20, 24:12, 25:1, 25:15, 25:18, 26:5, 26:8, 26:21, 27:1, 27:8, 27:14, 27:22, 28:5, 29:3, 29:6, 29:12, 29:22, 30:16, 32:4, 33:5, 33:7, 34:4, 34:16, 34:22,

35:5, 35:10, 36:2, 36:8, 36:15, 36:23, 37:4, 37:10, 37:16, 37:22, 38:4, 38:5, 39:3, 39:9, 39:21, 40:24, 41:14, 41:18, 42:5, 42:8, 42:10, 42:22, 42:24, 43:17, 44:1, 44:10, 44:17, 44:21, 45:5, 45:10, 45:13, 45:16, 45:17, 45:24, 46:7, 46:12, 46:15
**Honor's** [5] - 5:17, 11:18, 15:2, 27:15, 45:25
**Honorable** [1] - 20:24
**HONORABLE** [1] - 1:2
**hook** [1] - 15:22
**hope** [2] - 16:15, 26:5
**housekeeping** [1] - 43:16
**huge** [1] - 33:1
**hurt** [1] - 35:23
**hurting** [3] - 30:23, 30:24, 31:4

**I**

**identical** [3] - 18:2, 18:7, 18:10
**immediate** [2] - 25:9, 26:20
**immediately** [6] - 42:7, 42:11, 44:15, 44:25, 45:4, 45:6
**important** [4] - 24:2, 28:10, 35:16, 39:16
**inappropriate** [1] - 38:10
**INC** [1] - 1:7
**INC.-FLORIDA** [1] - 1:7
**inclined** [4] - 4:3, 4:4, 4:19, 30:3
**include** [1] - 14:23
**included** [1] - 37:24
**includes** [3] - 39:10, 39:19, 40:1
**inconsistent** [1] - 39:2
**incorporate** [1] - 8:7
**incorporating** [2] - 7:12, 9:4
**indirect** [1] - 37:17
**informal** [1] - 33:21
**information** [1] - 46:3
**infringe** [11] - 7:8, 7:9, 7:10, 7:19, 7:21, 14:20, 16:24, 17:7, 18:24, 19:21, 21:1
**infringed** [1] - 15:7
**infringement** [11] - 6:5, 16:10, 17:2, 27:12, 27:19, 34:15, 34:19, 37:17, 37:23, 40:17, 40:18
**infringes** [1] - 15:1
**infringing** [4] - 16:7, 16:9, 17:18, 18:9
**initial** [3] - 4:1, 4:25, 39:25
**injunction** [13] - 30:1, 31:21, 32:8, 33:4, 33:21, 34:9, 35:4, 42:19, 42:21, 42:25, 43:1, 43:6, 43:8
**injunctive** [2] - 28:1, 33:9
**input** [1] - 5:1
**insist** [1] - 4:20
**instance** [1] - 42:14
**instead** [3] - 22:17, 22:18, 22:20
**instruct** [1] - 45:18
**instructions** [1] - 5:21
**intending** [1] - 41:19
**interpretation** [1] - 12:9
**introductory** [1] - 6:4
**irreparable** [4] - 32:6, 32:13, 32:24, 34:11
**irreparably** [2] - 32:10, 34:6
**issue** [4] - 11:14, 17:5, 27:9, 41:19
**issues** [2] - 27:12, 27:19
**itself** [1] - 34:11

**J**

**JAMES** [2] - 1:15, 2:6
**James** [2] - 3:10, 3:18
**January** [1] - 20:24
**Jeff** [1] - 3:14
**JEFFERSON** [1] - 2:3
**JONES** [1] - 1:2
**Jones** [1] - 20:24
**judge** [2] - 12:14, 15:19
**Judge** [3] - 8:12, 15:8, 20:24
**JUDGE** [1] - 1:2
**judgment** [35] - 4:22, 5:23, 8:8, 9:8, 13:7, 14:3, 14:4, 14:10, 14:23, 15:8, 15:20, 15:24, 17:25, 21:11, 22:20, 23:8, 28:25, 30:7, 30:9, 30:11, 32:3, 34:25, 41:20, 41:21, 41:23, 41:25, 42:7, 42:20, 43:22, 44:5, 44:8, 44:20, 46:10
**JUSTIN** [1] - 1:15
**Justin** [1] - 3:8

**K**

**keep** [1] - 17:5
**keeps** [1] - 9:2
**KERRY** [1] - 2:9
**Kerry** [1] - 3:20
**key** [1] - 37:18
**kindly** [1] - 15:18
**knows** [2] - 17:16, 17:21
**Kp** [3] - 28:19, 43:7

**L**

**LABORATORIES** [1] - 1:7
**lack** [1] - 34:11
**language** [2] - 6:25, 23:2
**last** [1] - 36:17
**latest** [1] - 40:6
**launch** [5] - 9:24, 23:11, 34:6, 34:7, 46:4
**Law** [7] - 1:13, 1:16, 1:18, 1:20, 2:3, 2:6, 2:9
**law** [17] - 16:9, 26:1, 34:9, 36:4, 36:16, 36:18, 36:24, 37:6, 37:16, 37:25, 38:4, 38:8, 39:9, 39:10, 39:14, 39:16, 46:6
**layman's** [1] - 12:14
**lean** [1] - 8:10
**leanings** [2] - 4:1, 4:25
**least** [1] - 40:24
**leave** [1] - 25:24
**legs** [1] - 30:20
**less** [4] - 20:21, 21:7, 21:21, 22:2
**letters** [1] - 33:21
**level** [1] - 43:7
**liberty** [1] - 22:8
**lieu** [2] - 32:19, 32:21
**light** [1] - 33:23
**limitation** [5] - 6:14, 6:21, 9:2, 10:16, 13:13
**limitations** [2] - 12:20, 14:13
**limited** [2] - 29:14, 29:16
**limits** [1] - 21:18
**line** [3] - 4:21, 6:14, 40:16
**lines** [1] - 13:7
**list** [1] - 40:24
**listed** [1] - 39:21
**listen** [1] - 15:19
**lists** [1] - 6:6
**litigating** [2] - 15:13, 17:5
**lock** [1] - 8:24
**looking** [1] - 43:12
**lower** [1] - 32:21
**Lukes** [2] - 37:12, 37:18

**M**

**Madam** [1] - 41:11
**main** [1] - 39:7
**major** [3] - 40:1, 40:3, 40:4
**manufacturing** [1] - 43:7
**March** [2] - 1:7, 29:5
**MARCH** [1] - 3:1
**Margaret** [2] - 1:22, 46:20
**market** [3] - 25:6, 25:7, 30:21
**Markman** [1] - 12:9
**matter** [3] - 38:13, 39:10, 46:19
**max** [1] - 31:7
**maximum** [1] - 25:5
**McTigue** [5] - 2:9, 3:20, 45:15, 46:11
**mean** [2] - 35:2, 35:20
**means** [1] - 39:24
**measurable** [1] - 31:16
**measure** [1] - 21:19
**medicine** [1] - 35:22
**mental** [1] - 27:21
**mention** [1] - 40:19
**mentioned** [1] - 46:2
**met** [1] - 7:1
**method** [1] - 37:17
**MICHAEL** [1] - 1:18
**Michael** [1] - 3:17
**might** [1] - 27:25
**mind** [1] - 22:8
**minimum** [1] - 15:25
**Minneapolis** [1] - 1:21
**Minnesota** [1] - 1:21
**minor** [4] - 7:16, 39:11, 39:22, 40:5
**minus** [3] - 11:24, 12:7, 12:10
**minute** [1] - 21:21
**minutes** [6] - 20:23, 21:5, 21:8, 21:18, 21:23, 22:3
**misdrafted** [1] - 38:19
**misleading** [1] - 14:22
**misrepresent** [1] - 31:11
**misrepresentation** [5] - 17:10, 19:18, 24:1, 31:14, 45:20
**Molly** [1] - 3:11
**MOLLY** [1] - 1:13
**moment** [2] - 28:8, 31:19
**Monday** [2] - 24:11, 25:13
**money** [1] - 32:23
**monitor** [1] - 43:11
**Monroe** [1] - 3:10
**MONROE** [2] - 1:15, 3:10
**month** [1] - 36:10
**months** [1] - 34:8
**moon** [1] - 12:24
**moot** [1] - 29:23
**morning** [1] - 40:6
**most** [2] - 37:7, 37:9
**motion** [20] - 4:19, 5:12, 5:13, 5:14, 5:18, 7:5, 14:7, 26:25, 27:6, 29:8, 30:4, 30:5, 33:14, 33:20, 34:4, 34:8, 36:13, 36:15, 43:4, 43:20
**MOTION** [1] - 1:11
**motions** [8] - 3:25, 4:3, 5:12, 26:14, 29:21, 29:22, 29:25, 33:19
**move** [1] - 27:25
**moving** [1] - 34:16
**MR** [190] - 3:6, 3:8, 3:10, 3:12, 3:14, 3:16, 3:18, 3:20, 3:22, 5:3, 5:8, 5:11, 5:20, 6:3, 6:8, 6:12, 6:16, 6:22, 7:3, 7:16, 7:20, 7:23, 8:1, 8:14, 8:19, 9:3, 9:8, 9:11, 9:14, 9:19, 9:23, 10:4, 10:8, 10:11, 10:22, 10:25, 11:3, 11:9, 11:12, 11:15, 11:18, 11:21, 12:6, 12:11, 12:16, 12:21, 13:1, 13:11, 13:16,

13:18, 13:21, 13:25, 14:5, 14:14, 14:19, 15:11, 15:17, 16:3, 16:6, 16:15, 16:17, 16:25, 17:8, 17:15, 17:23, 18:1, 18:13, 18:14, 18:16, 18:22, 19:8, 19:13, 19:23, 19:25, 20:1, 20:4, 20:8, 20:11, 20:12, 20:16, 20:19, 21:13, 21:16, 22:10, 22:17, 23:6, 23:11, 23:12, 23:13, 23:16, 23:17, 23:18, 23:19, 23:24, 24:5, 24:8, 24:12, 24:15, 24:19, 24:22, 24:25, 25:3, 25:10, 25:14, 25:18, 25:23, 26:5, 26:7, 26:8, 26:14, 26:17, 26:21, 26:24, 27:1, 27:4, 27:8, 27:18, 27:22, 27:24, 28:3, 28:5, 28:10, 28:15, 28:18, 29:3, 29:11, 29:16, 29:21, 30:11, 30:16, 32:4, 32:14, 32:20, 33:5, 33:13, 33:19, 34:1, 34:3, 34:22, 35:5, 35:10, 35:12, 35:15, 35:25, 36:2, 36:7, 36:8, 36:14, 36:22, 37:4, 37:9, 37:15, 37:21, 38:3, 38:12, 38:20, 39:2, 39:7, 39:15, 39:20, 40:3, 40:13, 40:23, 41:2, 41:8, 41:11, 41:14, 41:25, 42:4, 42:8, 42:10, 42:15, 42:22, 42:24, 43:13, 43:15, 43:16, 43:20, 44:1, 44:4, 44:10, 44:17, 44:21, 45:1, 45:5, 45:10, 45:13, 45:15, 46:11, 46:15
**MS** [1] - 3:11
**must** [4] - 12:20, 23:8, 32:19, 32:21

## N

**narrows** [1] - 28:19
**nature** [1] - 28:1
**necessary** [1] - 34:25
**need** [13] - 4:25, 6:1, 8:25, 10:9, 12:12, 12:18, 13:6, 13:19, 13:22, 40:9, 44:11, 44:13, 45:23
**needs** [2] - 25:16, 33:9
**NEVADA** [2] - 1:1, 3:1
**Nevada** [4] - 1:14, 1:19, 1:23, 2:7
**never** [4] - 11:22, 23:21, 36:9, 36:11
**new** [6] - 9:17, 23:1, 28:25, 32:15, 38:9, 42:7
**next** [2] - 35:3, 36:3
**none** [1] - 37:12
**noninfringement** [2] - 10:13, 12:3
**noninfringing** [1] - 43:2
**nonobviousness** [1] - 37:11
**note** [1] - 21:17
**nothing** [5] - 8:5, 11:23, 12:1, 39:25, 45:23
**notice** [1] - 42:12
**notion** [3] - 34:10, 34:15, 37:10
**number** [4] - 16:12, 29:6, 45:19, 45:21

## O

**object** [3] - 36:8, 43:3, 46:5
**objected** [1] - 36:23
**objection** [5] - 37:14, 37:15, 37:20, 38:2, 39:6
**objections** [5] - 36:6, 36:9, 36:13, 36:21, 43:23
**obviously** [3] - 5:14, 6:13, 43:24
**occurred** [2] - 32:11, 39:12
**OF** [2] - 1:1, 1:11
**offer** [2] - 14:3, 15:24
**offered** [1] - 15:8
**offering** [3] - 10:13, 14:10, 43:18
**Official** [2] - 1:22, 46:21
**officially** [2] - 13:5, 14:25
**old** [3] - 19:5, 19:18, 19:21
**omits** [1] - 40:15
**once** [4] - 22:11, 22:19, 43:21, 44:5
**one** [11] - 6:23, 8:24, 17:3, 26:8, 37:8, 38:1, 38:3, 38:17, 40:6, 43:16, 45:19
**ones** [2] - 37:7, 37:9
**open** [1] - 4:5
**operate** [1] - 7:13
**operating** [1] - 23:2
**opinion** [1] - 10:13
**opportunity** [2] - 5:1, 23:21
**oral** [1] - 5:1
**order** [11] - 22:7, 22:12, 23:3, 23:8, 26:22, 30:1, 30:5, 30:7, 35:8, 41:19, 42:16
**ordered** [4] - 4:24, 10:10, 22:21, 45:18
**original** [1] - 17:14
**otherwise** [1] - 4:23
**ought** [1] - 21:9
**ourselves** [1] - 29:16
**outside** [7] - 4:10, 9:2, 10:21, 15:3, 19:10, 30:22
**outstanding** [1] - 41:9
**own** [3] - 36:15, 36:21, 36:22

## P

**P.M** [1] - 3:1
**page** [1] - 1:24
**pages** [1] - 36:19
**paragraph** [1] - 6:4
**paragraphs** [1] - 42:1
**parameters** [6] - 4:10, 8:23, 9:1, 11:2, 11:3, 34:14
**part** [2] - 23:19, 32:24
**particular** [1] - 30:7
**parties** [2] - 8:9, 9:12
**parties'** [1] - 27:15
**party** [1] - 5:15
**passage** [1] - 29:24
**past** [1] - 17:17
**patent** [20] - 4:10, 4:17, 6:5, 8:12, 9:2, 10:21, 11:2, 14:13, 16:2, 16:10, 18:10, 21:2, 27:10, 27:11, 31:3, 31:17, 34:14, 35:21, 38:21, 38:22
**patented** [1] - 35:22
**patents** [4] - 6:6, 15:3, 20:20, 30:2
**patience** [2] - 25:19, 40:25
**patiently** [1] - 10:4
**PAUL** [1] - 1:15
**Paul** [1] - 3:6
**payment** [1] - 32:22
**pending** [7] - 27:10, 30:5, 30:14, 33:14, 35:4, 36:5
**percent** [15] - 11:25, 12:7, 12:10, 12:22, 12:23, 13:11, 13:12, 13:15, 14:1, 14:18, 20:22, 21:8, 21:21, 21:22, 22:2
**percentage** [5] - 11:5, 11:21, 11:22, 11:25, 12:5
**percentages** [1] - 10:15
**perhaps** [1] - 28:11
**period** [3] - 31:13, 34:24, 35:21
**permanent** [1] - 42:19
**permit** [1] - 34:18
**permitted** [1] - 19:11
**perspective** [1] - 12:14
**pertain** [1] - 41:23
**phone** [1] - 9:18
**pill** [1] - 31:6
**pills** [1] - 43:12
**plaintiff** [1] - 1:5
**PLAINTIFF** [1] - 1:13
**play** [1] - 11:13
**pleadings** [3] - 3:25, 30:18, 34:25
**plus** [3] - 11:24, 12:7, 12:10
**point** [17] - 11:16, 11:21, 12:1, 12:2, 12:7, 13:25, 16:14, 16:17, 17:1, 17:9, 19:7, 23:11, 34:9, 34:16, 34:17, 44:21, 46:4
**points** [1] - 16:4
**posed** [1] - 27:12
**position** [4] - 10:18, 12:2, 17:13, 19:12
**possibility** [1] - 34:18
**possible** [1] - 5:6
**posttrial** [2] - 15:12, 26:2
**preclude** [1] - 43:6
**precludes** [1] - 43:1
**predispositions** [1] - 5:17
**prejudice** [9] - 6:20, 7:12, 7:15, 8:6, 9:13, 14:3, 14:10, 15:23, 22:19
**preliminary** [3] - 27:25, 33:20, 34:8
**prepare** [2] - 34:25, 35:22
**prepared** [1] - 46:4
**present** [5] - 13:10, 15:7, 15:24, 17:13, 42:14
**preserve** [5] - 13:6, 13:19, 13:23, 43:21, 43:23
**preserved** [2] - 15:15, 26:3
**presume** [1] - 9:14
**pretty** [3] - 10:20, 34:9, 40:10
**prevailing** [1] - 5:15
**previously** [2] - 12:24, 41:21
**price** [2] - 32:19, 32:21
**pricing** [4] - 30:20, 32:16, 32:18, 32:20
**primary** [1] - 37:15
**problem** [7] - 13:9, 14:20, 16:6, 16:7, 16:18, 17:2, 19:12
**problems** [2] - 25:3, 37:5
**proceed** [7] - 4:2, 5:2, 22:24, 23:1, 31:21, 44:9, 44:15
**proceeding** [2] - 41:6, 41:22
**proceedings** [1] - 46:18
**process** [2] - 35:14, 41:4
**produce** [2] - 30:22, 34:5
**produced** [1] - 13:5
**product** [13] - 16:8, 18:2, 18:4, 19:4, 19:6, 19:9, 19:11, 19:17, 21:23, 22:1, 30:25, 31:2, 31:22
**product's** [1] - 30:20
**products** [1] - 43:2
**proffers** [1] - 38:8
**profile** [1] - 22:2
**proof** [2] - 37:11, 37:18
**proposal** [1] - 26:9
**propose** [2] - 19:5, 42:20
**proposed** [14] - 4:14, 5:21, 19:17, 29:7, 36:4, 37:25, 38:4, 38:8, 39:8, 42:25, 43:1, 43:5, 43:8, 43:9
**proposing** [1] - 10:6
**protect** [1] - 14:23
**provide** [4] - 36:10, 36:12, 36:18, 36:20

**provided** [6] - 5:22, 29:7, 36:9, 36:15, 36:21, 36:22
**provides** [1] - 21:19
**public** [2] - 31:11, 31:14
**purpose** [2] - 38:17, 38:18
**purposes** [1] - 40:24
**pursuant** [4] - 4:13, 8:6, 9:10, 14:3
**pursue** [1] - 30:12
**put** [4] - 5:22, 8:7, 8:12, 8:21

## Q

**quick** [1] - 43:16
**quicker** [1] - 26:15
**quickly** [1] - 24:25
**quote** [1] - 40:11
**quoting** [1] - 40:13

## R

**range** [1] - 28:19
**rate** [1] - 22:2
**RDR** [2] - 1:22, 46:20
**reach** [1] - 25:4
**read** [4] - 3:25, 12:5, 20:16, 21:13
**ready** [2] - 28:3, 41:23
**real** [5] - 14:19, 16:7, 16:18, 18:5, 18:19
**really** [3] - 6:25, 31:6, 31:8
**reanalyze** [1] - 31:19
**reargue** [1] - 29:19
**reason** [1] - 10:1
**reasoning** [1] - 40:16
**receiving** [1] - 28:24
**reconsider** [1] - 29:25
**reconsideration** [3] - 4:4, 27:6, 30:4
**record** [22] - 9:18, 10:17, 11:23, 13:3, 16:14, 19:1, 25:19, 25:22, 25:24, 26:4, 28:7, 33:7, 36:25, 37:2, 39:24, 40:11, 40:25, 41:15, 42:13, 42:15, 46:6, 46:18
**refer** [1] - 38:22
**reference** [1] - 8:7
**regarding** [1] - 21:4
**regression** [1] - 11:10
**reject** [1] - 43:10
**rejected** [1] - 11:7
**relate** [2] - 27:9, 27:11
**relation** [1] - 34:13
**relatively** [1] - 29:4
**release** [2] - 21:18, 22:2
**released** [4] - 11:22, 11:23, 11:25, 20:22
**releases** [1] - 12:5
**relief** [2] - 28:1, 33:9
**remain** [1] - 14:12
**rendered** [1] - 29:23
**renew** [2] - 35:12, 35:15
**RENO** [1] - 3:1
**Reno** [4] - 1:14, 1:19, 1:23, 2:7
**Reported** [1] - 1:22
**Reporter** [3] - 1:22, 41:12, 46:21
**representation** [7] - 16:23, 18:8, 19:19, 19:21, 19:22, 19:24, 20:6
**representations** [1] - 20:2
**representing** [4] - 18:10, 19:4, 19:16, 30:25
**request** [4] - 15:6, 33:21, 35:12, 35:16
**require** [1] - 38:23
**required** [1] - 32:25
**requirements** [1] - 16:1
**requires** [2] - 20:20, 42:17
**resolved** [1] - 25:5
**respect** [8] - 11:7, 13:21, 30:6, 30:18, 33:13, 38:5, 39:3, 44:10
**respectfully** [2] - 32:5, 34:24
**respond** [9] - 17:1, 18:25, 23:25, 24:3, 24:4, 25:1, 26:19, 29:1, 45:16
**response** [2] - 23:15, 36:16
**rest** [1] - 28:20
**restraining** [3] - 35:7, 41:19, 42:16
**resulting** [1] - 42:19
**reveal** [1] - 21:22
**revert** [1] - 17:17
**revise** [1] - 6:20
**REZAC** [2] - 1:13, 3:11
**Rezac** [1] - 3:11
**rights** [5] - 10:12, 13:6, 13:23, 16:2, 16:11
**ROBERT** [1] - 1:2
**Rounds** [1] - 3:17
**ROUNDS** [2] - 1:18, 3:16
**rule** [1] - 27:2
**Rule** [3] - 42:16, 42:18
**ruled** [4] - 33:18, 39:1, 39:3, 39:21
**ruling** [8] - 11:18, 35:4, 35:6, 35:8, 38:21, 39:17, 40:15, 40:16
**rulings** [1] - 38:16

## S

**sale** [1] - 43:2
**saw** [1] - 23:21
**scared** [1] - 27:4
**scope** [3] - 28:19, 43:6, 43:8
**seal** [1] - 9:5
**second** [3] - 8:18, 8:21, 30:3
**second-guess** [2] - 8:18, 8:21
**secondary** [1] - 37:11
**section** [2] - 38:3, 38:7
**see** [3] - 14:6, 23:21, 23:24
**seek** [4] - 4:7, 33:4, 42:12, 46:5
**sell** [19] - 4:8, 4:14, 19:5, 19:10, 19:17, 22:1, 30:10, 30:14, 31:21, 41:22, 43:12, 43:25, 44:2, 44:3, 44:7, 44:9, 44:12, 44:19, 46:9
**selling** [6] - 30:25, 31:2, 31:5, 31:12, 35:14, 44:4
**semantic** [1] - 18:6
**semantics** [2] - 19:3, 19:14
**send** [4] - 24:16, 24:20, 26:9
**sense** [1] - 8:16
**sent** [4] - 23:22, 34:12, 37:12
**separate** [1] - 4:22
**set** [5] - 15:13, 24:12, 33:11, 36:15, 37:1
**seven** [1] - 26:11
**several** [1] - 39:21
**shorter** [1] - 5:5
**show** [1] - 20:14
**shown** [1] - 6:2
**side** [2] - 31:10, 31:15
**sides** [1] - 41:6
**significance** [2] - 29:9, 29:11
**silent** [1] - 21:4
**simply** [3] - 8:5, 18:25, 40:17
**small** [1] - 38:7
**sold** [2] - 7:25, 8:1
**sole** [1] - 8:3
**soon** [1] - 24:16
**Sorenson** [1] - 3:12
**SORENSON** [48] - 1:20, 3:12, 28:3, 28:5, 28:10, 28:15, 28:18, 29:3, 29:11, 29:16, 29:21, 30:11, 30:16, 32:4, 32:14, 32:20, 33:5, 33:13, 33:19, 34:1, 34:3, 34:22, 35:25, 36:2, 36:7, 36:14, 36:22, 37:4, 37:9, 37:15, 37:21, 38:3, 38:12, 38:20, 39:2, 39:7, 39:15, 39:20, 40:3, 40:13, 40:23, 41:2, 41:8, 41:11, 42:15, 42:24, 43:13, 43:15
**sorry** [5] - 20:8, 23:16, 27:8, 33:3, 45:10
**South** [1] - 1:23
**specific** [6] - 6:25, 36:6, 36:9, 36:12, 37:5, 39:9
**specifically** [4] - 29:12, 42:17, 45:18, 46:2
**specification** [7] - 7:5, 9:21, 16:9, 21:4, 21:7, 21:21, 45:24
**specifications** [2] - 18:18, 31:3
**specify** [1] - 8:23
**spent** [1] - 15:13
**squeeze** [1] - 29:1
**stand** [2] - 33:16, 35:23
**stars** [1] - 12:25
**statements** [1] - 18:24
**STATES** [1] - 1:1
**statistically** [1] - 31:16
**stay** [9] - 30:5, 30:9, 30:11, 31:21, 31:23, 32:2, 33:14, 35:20, 42:13
**still** [4] - 9:15, 9:24, 18:8, 44:22
**stipulate** [3] - 4:7, 13:8, 13:22
**stipulated** [3] - 4:12, 4:24, 17:25
**stipulation** [24] - 4:13, 4:15, 4:21, 5:22, 6:3, 6:7, 6:11, 6:12, 7:12, 8:7, 9:4, 9:10, 14:2, 14:9, 14:16, 22:12, 25:7, 26:10, 27:11, 27:18, 28:1, 43:21, 44:5
**stockpiled** [1] - 16:8
**Street** [1] - 1:23
**strengthens** [1] - 23:1
**strike** [5] - 5:13, 5:14, 5:19, 33:20, 43:21
**strong** [1] - 34:10
**stronger** [2] - 21:10, 22:5
**strongly** [2] - 4:15, 4:20
**strongly-worded** [2] - 4:15, 4:20
**stuff** [1] - 26:11
**subject** [2] - 23:7, 25:7
**submission** [5] - 14:22, 15:1, 20:9, 20:13, 46:1
**submitted** [10] - 14:22, 20:5, 21:24, 23:22, 24:9, 26:1, 28:22, 33:22, 37:6, 45:19
**substantial** [1] - 31:10
**success** [1] - 37:13
**sufficient** [1] - 37:2
**suggesting** [1] - 38:12
**summary** [2] - 40:15, 40:16
**supplement** [11] - 21:19, 22:15, 22:18, 22:19, 22:21, 22:25, 23:1, 23:7, 29:7, 40:7
**support** [5] - 5:10, 10:13, 10:17, 12:2, 29:8
**supporting** [1] - 37:23
**supports** [2] - 32:7, 34:10
**suppose** [4] - 33:6, 33:16, 33:20, 36:2
**Supreme** [1] - 33:8

## T

**tables** [4] - 38:13, 38:17, 38:22, 38:23
**tablets** [1] - 21:1
**tax** [1] - 25:18
**telephone** [3] - 9:16, 24:6, 25:11

**temporary** [3] - 35:7, 41:19, 42:16
**ten** [1] - 24:20
**term** [3] - 11:4, 12:14, 18:11
**terms** [2] - 18:6, 18:10
**test** [2] - 21:24, 38:14
**testimony** [6] - 10:12, 10:14, 11:4, 11:24, 13:5, 37:19
**THE** [168] - 1:2, 1:13, 3:4, 3:24, 5:7, 5:9, 5:18, 6:1, 6:10, 6:13, 6:18, 6:24, 7:7, 7:18, 7:22, 7:25, 8:2, 8:17, 8:20, 9:7, 9:10, 9:12, 9:16, 9:22, 10:2, 10:7, 10:9, 10:19, 10:23, 11:1, 11:6, 11:10, 11:13, 11:17, 11:20, 12:4, 12:8, 12:12, 12:18, 12:22, 13:9, 13:14, 13:17, 13:20, 13:24, 14:1, 14:8, 14:17, 15:5, 15:15, 15:18, 16:5, 16:13, 16:16, 16:22, 17:4, 17:12, 17:21, 17:24, 18:6, 18:21, 19:2, 19:9, 19:14, 20:3, 20:6, 20:14, 20:18, 21:9, 21:15, 22:5, 22:16, 22:23, 23:10, 23:14, 23:23, 24:3, 24:6, 24:10, 24:14, 24:18, 24:23, 25:2, 25:8, 25:11, 25:16, 25:21, 26:3, 26:6, 26:13, 26:15, 26:18, 26:23, 26:25, 27:2, 27:5, 27:17, 27:20, 27:23, 28:2, 28:4, 28:9, 28:14, 28:17, 28:23, 29:9, 29:14, 29:19, 30:9, 30:14, 30:17, 32:12, 32:15, 33:1, 33:12, 33:18, 33:25, 34:2, 34:20, 35:2, 35:7, 35:11, 35:14, 35:18, 36:1, 36:6, 36:12, 36:20, 36:25, 37:7, 37:14, 37:20, 38:1, 38:11, 38:15, 38:25, 39:5, 39:13, 39:18, 40:1, 40:9, 40:20, 41:1, 41:5, 41:10, 41:13, 41:21, 42:2, 42:6, 42:9, 42:11, 42:18, 42:23, 43:10, 43:14, 43:18, 43:25, 44:2, 44:7, 44:15, 44:19, 44:24, 45:3, 45:8, 45:12, 45:14, 46:8, 46:13
**theirs** [1] - 36:16
**therefore** [3] - 4:11, 15:19, 38:22
**they've** [10] - 14:21, 15:8, 15:10, 17:11, 17:20, 18:16, 36:10, 42:25, 43:1, 44:22
**thinking** [1] - 43:5
**three** [4] - 8:18, 9:25, 15:13, 45:9
**timewise** [1] - 31:12
**timing** [3] - 24:13, 26:9, 29:3
**today** [3] - 33:24, 36:3, 41:20
**tomorrow** [4] - 6:19, 9:24, 24:10, 25:13
**took** [1] - 4:9
**totally** [1] - 30:22
**towards** [1] - 4:19
**tracks** [1] - 9:9
**tranexamic** [4] - 20:21, 20:22, 21:1, 21:5
**transcript** [4] - 40:12, 40:14, 40:21, 46:18
**TRANSCRIPT** [1] - 1:11
**transcripts** [1] - 41:8
**trial** [17] - 10:12, 10:17, 11:4, 11:23, 12:13, 13:3, 13:6, 14:21, 19:7, 20:23, 21:25, 28:21, 32:15, 32:17, 33:1, 35:8, 37:12
**true** [3] - 7:8, 33:13, 35:24
**truly** [1] - 18:3
**trying** [3] - 13:2, 27:24, 28:25
**Tuesday** [3] - 24:11, 25:13, 34:13
**turn** [1] - 10:5
**two** [11] - 5:12, 16:12, 24:17, 24:21, 25:1, 26:19, 29:21, 29:25, 38:6, 45:21

**U**

**under** [13] - 4:8, 7:14, 7:21, 9:5, 14:13, 15:13, 19:5, 19:11, 19:17, 22:6, 23:2, 34:19, 37:24
**underneath** [1] - 30:20
**undivided** [1] - 11:24
**unfortunate** [1] - 29:4
**UNITED** [1] - 1:1
**unsatisfactory** [1] - 15:21
**up** [9] - 5:24, 6:23, 13:22, 15:18, 17:9, 27:9, 28:24, 35:23, 41:25
**uses** [1] - 11:4
**USP** [3] - 38:13, 38:14, 38:23

**V**

**vague** [1] - 4:6
**variance** [1] - 10:24
**various** [1] - 3:25
**view** [2] - 5:3, 13:12
**violate** [1] - 31:3
**violated** [1] - 4:16
**violates** [1] - 35:23
**violating** [1] - 31:17
**violation** [2] - 19:11, 30:23
**violative** [3] - 6:21, 19:11, 31:22
**Virginia** [1] - 1:23
**vs** [1] - 1:6

**W**

**waited** [1] - 24:15
**waiting** [1] - 9:25
**walk** [2] - 15:9, 36:3
**waltz** [1] - 6:19
**wants** [1] - 24:23
**Washington** [2] - 1:16, 2:10
**Watson** [7] - 3:13, 3:15, 3:17, 4:4, 5:9, 28:13, 41:24
**WATSON** [3] - 1:7, 1:18, 2:3
**Watson's** [2] - 26:25, 27:5
**WEDNESDAY** [1] - 3:1
**week** [2] - 25:5, 35:3
**weeks** [2] - 9:25, 28:13
**weight** [1] - 20:22
**whatsoever** [1] - 18:23
**white** [1] - 20:13
**whole** [2] - 9:17, 28:25
**witness** [1] - 12:1
**worded** [2] - 4:15, 4:20
**wording** [1] - 8:24
**words** [6] - 6:13, 6:18, 14:8, 15:6, 15:22, 22:7
**world** [2] - 9:5, 18:1
**write** [1] - 39:13
**writing** [2] - 8:21, 36:10
**wrote** [1] - 41:25

**Y**

**years** [3] - 8:18, 15:13, 35:21
**yesterday** [1] - 24:23
**yourself** [3] - 8:24, 8:25, 29:14