**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**BEFORE THE HONORABLE ROBERT C. JONES, DISTRICT JUDGE**
**---o0o---**

| | | |
|---|---|---|
| **FERRING B.V.,** | : | |
| | : | |
| **Plaintiff,** | : | **No. 3:11-CV-481-RCJ-VPC** |
| | : | **3:11-CV-485-RCJ-VPC** |
| **-vs-** | : | **3:11-CV-854-RCJ-VPC** |
| | : | **3:12-CV-1941-RCJ-VPC** |
| **WATSON LABORATORIES,** | : | |
| **INC.-FLORIDA, APOTEX, INC.,** | : | **April 23, 2014** |
| **and APOTEX CORP.,** | : | |
| | : | **Reno, Nevada** |
| **Defendants.** | : | |
| | : | |

**TRANSCRIPT OF MOTION HEARING**

**APPEARANCES:**

| | |
|---|---|
| **FOR THE PLAINTIFF:** | **MOLLY M. REZAC**<br>**Attorney at Law**<br>**Reno, Nevada** |
| | **PAUL W. BROWNING and**<br>**JUSTIN J. HASFORD**<br>**Attorneys at Law**<br>**Washington, D.C.** |
| **FOR DEFENDANT APOTEX:** | **BARRY P. GOLOB**<br>**Attorney at Law**<br>**Washington, D.C.** |
| | **JAMES W. BRADSHAW**<br>**Attorney at Law**<br>**Reno, Nevada** |
| **Reported by:** | **Margaret E. Griener, CCR #3, RDR**<br>**Official Reporter**<br>**400 South Virginia Street**<br>**Reno, Nevada 89501**<br>**(775)329-9980** |

RENO, NEVADA, WEDNESDAY, APRIL 23, 2014, 9:22 A.M.

---o0o---

THE COURT: Good morning. Thank you. Please be seated.

We're here revisiting the case of Ferring versus Apotex. Appearances, please.

MR. BROWNING: Paul Browning on behalf of plaintiff Ferring B.V.

MR. HASFORD: Justin Hasford also on behalf of plaintiff Ferring B.V.

MS. REZAK: Molly Rezac on behalf of Ferring.

THE COURT: Thank you.

MR. BRADSHAW: Jim Bradshaw on behalf of the Apotex defendants.

THE COURT: Thank you.

MR. GOLOB: Good morning, your Honor. Barry Golob on behalf of the Apotex defendants.

THE COURT: Thank you.

All right. You wanted to revisit the restraining order, preliminary injunction.

MR. BROWNING: Yes, thank you, your Honor. May I approach and proceed?

THE COURT: Would you, please.

MR. BROWNING: Good morning.

Ferring respectfully submits that the evidence presented in the parties' briefing establishes that Ferring is entitled to a preliminary injunction.

Courts consider four factors in deciding whether to grant a preliminary injunction, and those four factors are likelihood of success on the merits, irreparable harm to the party proposing the motion, the balance of the equities and the public interest.

THE COURT: And to be express, what exactly are you seeking in the way of a preliminary injunction?

MR. BROWNING: We're seeking a preliminary injunction of all sales by Apotex pending resolution of the patent infringement case before your Honor, and we believe on the record before your Honor we've established --

THE COURT: So, in other words, to be clear --

MR. BROWNING: Yes.

THE COURT: -- all sales, whether compliant with the patent, not infringing the patent or not, and all sales whether under an amended ANDA or not, correct?

MR. BROWNING: If I'm following your Honor, we believe the undisputed evidence is that their ANDA as currently approved infringes upon Ferring's patent rights. The specifications encroach on our patent claims, therefore --

THE COURT: And why is that? How does it infringe?

MR. BROWNING: That is because we have dissolution limitations in the '005 patent claims, and the dissolution limitation of interest here is at about 15 minutes less than about 40 percent.

THE COURT: And, of course, they've responded by saying that they have an amendment in process, correct? And you'll tell me about the status of that, that imposes that further limitation upon their ANDA approval, right?

MR. BROWNING: That is the position they've taken, that's correct, your Honor. I'd like to respond to that briefly.

THE COURT: Would you, please.

MR. BROWNING: One is we submitted our briefing on March 14th, your Honor. To this date we haven't seen any credible evidence in support of that amendment.

We have some pieces of paper. We have no declaration other than counsel who have no personal knowledge of it. So we have no basis for accepting that and we would respectfully submit that your Honor shouldn't either.

Secondly, with respect to that amendment, we don't agree that it renders -- even if that amendment is in place and were approved, which we would dispute, we don't agree that it renders the ANDA noninfringing, and that's because the undisputed evidence at trial in the related case was that Apotex has a variance in the amount of the active ingredient

in each tablet, 650 milligrams plus or minus 5 percent.

And when they do dissolution testing, however, they assume every tablet has exactly 650 milligrams, and that's why dissolution test results are sometimes over a hundred percent. That makes no sense except that we're assuming each tablet has exactly 650 milligrams.

The reason this is important is because of that variance, not less than 44 percent effectively becomes not less than 41.9 percent. We have the mathematics in our briefing, but I'll go through it quickly with your Honor, is that an individual tablet can actually have to up to 682 milligrams in it. That's 5 percent more than 650.

However, in dissolution testing, they're just looking to see if 44 percent of the 650 milligrams is released. That's 286 milligrams. If you take 286 milligrams, divide it by 682.5, you get 41.9 percent we will submit.

THE COURT: All of that math is delightful. Do you have any actual evidence of an offending product --

MR. BROWNING: Your Honor, what we have --

THE COURT: -- or is this just theoretical under the ANDA, even the amended ANDA that they're suggesting, doesn't comply?

MR. BROWNING: Well, your Honor, we have no discovery in this litigation. What we have is we have products produced three years ago with samples --

THE COURT: So it's theoretical based upon the ANDA that they have suggested.

MR. BROWNING: I understand what your Honor is saying. We would dispute it's theoretical. We would say it's their ANDA specifications control the infringement analysis, and they're not entitled to have specifications that encroach on our patent claims. That's the law.

If they had -- if they had specifications outside of our patent claims, we wouldn't be here.

THE COURT: Okay.

MR. BROWNING: But they have specifications --

THE COURT: But just to be clear, we're not talking about -- is it 271(a)? We're talking about 271(e).

MR. BROWNING: You're correct, your Honor. Our claim in this case is based on 271(e). That's the claim in our complaint, and that's what we're seeking relief on, yes, your Honor.

Your Honor, we also have -- given the short notice of the hearing, Dr. Williams wasn't available to attend in person. We do have him available by phone if your Honor would like to hear testimony on the fact that 44 percent is effectively 41.9 percent, and he's available right now, and my colleague, Mr. Hasford, could take him through that testimony if you would accept that evidence.

THE COURT: I won't. I do not accept telephonic

**sworn testimony.**

**MR. BROWNING: Thank you, your Honor. I understand.**

**Let me move on to the next point, irreparable harm, and that's effectively unrebutted.**

**As I said in my opening, we believe that the record -- the evidence of record on this PI hearing, which we think is what controls the analysis, is unrebutted on the infringement point which we just discussed and also irreparable harm.**

**We submitted credible evidence that your Honor accepted of irreparable harm in the form of the Gavarini (phonetic) declaration. They never responded. So it's unrebutted evidence of irreparable harm.**

**And, therefore, given the irreparable harm which is unrebutted, and the infringement analysis which again we would submit is not unrebutted, they haven't come forward with any evidence. They need to have evidence.**

**They've had since March 14. We're here today on the 22nd [sic] of April. They haven't come forward with it. If they had credible, competent evidence of noninfringement, it should be here in front of your Honor. It isn't.**

**The only thing they can say is, well, we are thinking about amending our ANDA. They haven't proven that, your Honor.**

Unless your Honor has any additional questions, I believe that concludes my remarks.

THE COURT: Thank you.

MR. GOLOB: Good morning, your Honor. Barry Golob.

As the Court knows and has already found, that we did file the amendment on March 25th. We gave them a copy. It shows the certificate of filing. Yesterday we gave them the document. If I could hand it up, please, your Honor.

THE COURT: Yes, please. And, Madam Clerk, will mark this as an exhibit in the preliminary injunction hearing.

MR. GOLOB: Yes, we marked it as Exhibit 1.

THE COURT: Okay.

(Defendant's Exhibit 1 received in evidence.)

MR. GOLOB: As you can see, your Honor, our internal regulatory person had contacted the FDA about the filing that we made on March 25th, and the e-mail says the supplement has been granted by the FDA.

So we gave that to Ferring yesterday --

THE COURT: What exactly is the supplement?

MR. GOLOB: The supplement is the not less than 44 percent at 15 minutes. It's attached to the opposition in our motion. It shows a certificate of filing in our papers, and this shows that it's been granted. So --

THE COURT: So you -- you and I should interpret

that ANDA approval as limiting any product that is approved to complying with that additional supplemental specification.

MR. GOLOB: Absolutely, your Honor. If we didn't, we could be fined, sanctioned, taken off the market, not allowed any products.

THE COURT: So if counsel says that there is a variance, and you produce a nonconforming product to the ANDA which also, by the way, infringes the patent, you would be subject to both the criminal and civil penalties under the Food and Drug Administration Act as well as patent infringement damage claims.

MR. GOLOB: Yes. We have told the FDA that we're going to comply with this, and we must do that.

THE COURT: Okay.

MR. GOLOB: That is correct.

THE COURT: All right.

MR. GOLOB: So what's happening here, your Honor, is, as you know, they're asking for -- I guess the Court called it a stringent standard here, but this is a very heavy burden on Ferring to take a product that is noninfringing by its ANDA specification and take it off of the market.

As your Honor is aware, during the trial we had a couple of weeks ago, the 15-minute time point as the subject of two of the patents, and we were -- in our closing argument

I don't think there's any dispute, that the same 15-minute time point that's in the '005 patent here was addressed by the Court not only in claim construction and in findings and so forth with respect to the other patents that are similar from the trial before, and, in fact, Dr. Williams even admitted that our product did not fringe. We showed that at the closing.

But, your Honor, as to likelihood of success, on the 4th of April the Federal Circuit denied Ferring's motion on the same facts that they put in here with respect to the earlier judgment that you put out, that they denied their motion for an injunction there.

This case involves a related patent. The Court has already heard this stuff. On April 7th, this Court denied the TRO properly finding that there is no likelihood of success on the merits. Here the specification has been amended.

We submit to your Honor that that takes us outside the patent, and according to the *Bayer* case, *Bayer v Elan*, this is a noninfringement, and we'd like to move for summary judgment, actually, of noninfringement in this matter as quickly as possible to hopefully resolve this and get it off of the Court's docket.

As to the likelihood of success, as I said, the supplement became effective when we filed it. It's binding on Apotex. It was granted on the 3rd. As a matter of law, we

must comply with that. As the Court has already noted, this dissolution specification takes us outside of the patent.

I'd be happy to discuss the *Bayer* case and why we're exactly like that, but I think the Court has probably heard enough on success on the merits.

I want to address the irreparable harm, your Honor.

They submitted this affidavit of Mr. Gavarini, is that right?

MR. BROWNING: Gavarini.

MR. GOLOB: -- Gavarini, yet they didn't bring him here for cross-examination.

There's three problems I have with the irreparable harm. Number one, irreparable means you can't fix it. So in his declaration he said they're trying to repair this harm. Well, that means it's not irreparable.

Number two, his entire affidavit is based on the fact that Watson is off the market and Apotex is going to be the sole party.

Monday the Federal Circuit ruled, they stayed the injunction as to Watson. Watson is still on the market. So us being on the market is not harming them at all, and, furthermore, any harm that would have happened would have happened in the last 15 months that Watson has been on the market.

You can't create a second level of harm here, and,

**in fact, they never moved for an injunction against Watson, and now, all of a sudden here with an admittedly recognized noninfringing product, they're just trying to get us off the market, and Watson is still on. The Federal Circuit has told them they have stayed their injunction pending further paper.**

**THE COURT: Stayed pending appeal, pending decision?**

**MR. GOLOB: Pending a decision on that issue. They filed a paper saying we'd like it stayed. The Court stayed it until the briefing is done and so forth. So Watson is still on the market. There is no harm.**

**They've said they're down to 5 percent because of Watson. How could we harm them any further? There is no harm here.**

**And, more importantly, this is a no success on the merit case. We have a clearly noninfringing product under *Bayer,* and if the Court, after this decision, wants to entertain summary judgment or a judgment or whatever, we're open to resolving this as quickly as possible.**

**THE COURT: Thank you.**

**MR. GOLOB: Thank you, your Honor.**

**THE COURT: Anything else? Please.**

**MR. BROWNING: Very briefly, your Honor. Thank you. Your Honor, I would like to just correct a couple of points.**

Your Honor, the 44 percent, which we dispute, the new alleged amendment, would be -- if it did exist, would be subject to the 105 percent variance. That's also part of their specifications. You need to look at the ANDA specifications as a whole, and the not less than 44 percent is modified by the fact that their product can be between 95 percent and 105 percent of potency.

If you look at the documents they themselves have submitted, every single tablet tested in those test results, which are test results from a few years ago, every single tablet had greater than a hundred percent in it. They had up to 102.05 percent just in that small sample.

So this is the -- the claim that nothing less than 44 percent would be released is just not accurate. It doesn't take into account the other specifications in the ANDA.

Secondly, I don't know the status of whether Watson is on the market at all. I don't think counsel for Apotex does either. I think that's unknown.

And, finally, we are in fact being harmed by Apotex being on the market, and your Honor correctly found, we submit, irreparable harm based on unrebutted evidence submitted during the briefing of our motion, and we don't think there's any reason to reconsider that now.

Thank you, your Honor.

THE COURT: Thank you so much.

I am going to deny the preliminary injunction. I'll ask you, Apotex, to prepare proposing findings and conclusions. It should focus upon my primary analysis, but, with regard to any findings, should cite specifically to the record, affidavits and such on the present motion, as well as your statements and submission here today.

The primary analysis, of course, is that, number one, this is a 271(e) analysis, not (a). We're not looking at any shown examples of offending products, and under 271(e) the ANDA is pretty clear that it must not, cannot offend or infringe the patent.

So that will be the focus of the analysis, and if you'll prepare proposed findings and conclusions in that regard, I would appreciate that.

MR. GOLOB: We will do that, your Honor. Can we have a couple of weeks to get that done?

THE COURT: More like a week to ten days, please.

MR. GOLOB: Okay. Thank you.

THE COURT: So that they can get -- pursue immediate relief, and, of course -- and any other motions you want to follow it with, that's up to you. I'm not going to opine on something that's not in front of me so --

MR. GOLOB: Very good, your Honor. Thank you very much.

THE COURT: Okay.

MR. BROWNING: Your Honor, just one moment. Would you like counsel to pass those by us first before it's submitted?

THE COURT: Yes, please.

MR. BROWNING: Thank you, your Honor.

THE COURT: Yes, please. Thank you so much.

MR. GOLOB: Thank you.

-o0o-

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/Margaret E. Griener 04/24/2014
Margaret E. Griener, CCR #3, RDR
Official Reporter

**'**

**'005** [2] - 4:2, 10:2

**/**

**/s/Margaret** [1] - 15:14

**0**

**04/24/2014** [1] - 15:14

**1**

**1** [2] - 8:12, 8:14
**102.05** [1] - 13:12
**105** [2] - 13:3, 13:7
**14** [1] - 7:19
**14th** [1] - 4:14
**15** [3] - 4:3, 8:22, 11:23
**15-minute** [2] - 9:24, 10:1

**2**

**2014** [2] - 1:7, 2:1
**22nd** [1] - 7:20
**23** [2] - 1:7, 2:1
**25th** [2] - 8:7, 8:17
**271(a** [1] - 6:13
**271(e** [2] - 14:8, 14:9
**271(e)** [2] - 6:13, 6:15
**286** [2] - 5:15

**3**

**3** [2] - 1:23, 15:14
**3:11-CV-481-RCJ-VPC** [1] - 1:5
**3:11-CV-485-RCJ-VPC** [1] - 1:5
**3:11-CV-854-RCJ-VPC** [1] - 1:6
**3:12-CV-1941-RCJ-VPC** [1] - 1:6
**3rd** [1] - 10:25

**4**

**40** [1] - 4:4
**400** [1] - 1:24
**41.9** [3] - 5:9, 5:16, 6:22
**44** [7] - 5:8, 5:14, 6:21, 8:22, 13:1, 13:5, 13:14
**4th** [1] - 10:9

**5**

**5** [3] - 5:1, 5:12, 12:12

**6**

**650** [5] - 5:1, 5:3, 5:6, 5:12, 5:14
**682** [1] - 5:12
**682.5** [1] - 5:16

**7**

**775)329-9980** [1] - 1:25
**7th** [1] - 10:14

**8**

**89501** [1] - 1:24

**9**

**95** [1] - 13:7
**9:22** [1] - 2:1

**A**

**a)** [1] - 14:8
**A.M** [1] - 2:1
**above-entitled** [1] - 15:13
**absolutely** [1] - 9:3
**accept** [2] - 6:24, 6:25
**accepted** [1] - 7:12
**accepting** [1] - 4:18
**according** [1] - 10:18
**account** [1] - 13:15
**accurate** [1] - 13:14
**Act** [1] - 9:10
**active** [1] - 4:25
**actual** [1] - 5:18
**additional** [2] - 8:1, 9:2
**address** [1] - 11:6
**addressed** [1] - 10:2
**Administration** [1] - 9:10
**admitted** [1] - 10:5
**admittedly** [1] - 12:2
**affidavit** [2] - 11:7, 11:16
**affidavits** [1] - 14:5
**ago** [3] - 5:25, 9:24, 13:10
**agree** [2] - 4:21, 4:22
**alleged** [1] - 13:2
**allowed** [1] - 9:5
**amended** [3] - 3:19, 5:21, 10:16
**amending** [1] - 7:24
**amendment** [6] - 4:6, 4:15, 4:20, 4:21, 8:7, 13:2
**amount** [1] - 4:25
**analysis** [7] - 6:5, 7:8, 7:16, 14:3, 14:7, 14:8, 14:12
**ANDA** [15] - 3:19, 3:21, 4:8, 4:23, 5:21, 6:2, 6:5, 7:24, 9:1, 9:7, 9:21, 13:4, 13:15, 14:10
**APOTEX** [3] - 1:7, 1:8, 1:18
**Apotex** [10] - 2:7, 2:15, 2:18, 3:12, 4:25, 10:25, 11:17, 13:17, 13:19, 14:2
**appeal** [1] - 12:6
**appearances** [1] - 2:7
**APPEARANCES** [1] - 1:12
**appreciate** [1] - 14:14
**approach** [1] - 2:23
**approval** [2] - 4:8, 9:1
**approved** [3] - 3:22, 4:22, 9:1
**APRIL** [1] - 2:1
**April** [4] - 1:7, 7:20, 10:9, 10:14
**argument** [1] - 9:25
**assume** [1] - 5:3
**assuming** [1] - 5:5
**attached** [1] - 8:22
**attend** [1] - 6:19
**Attorney** [3] - 1:13, 1:18, 1:20
**Attorneys** [1] - 1:16
**available** [3] - 6:19, 6:20, 6:22
**aware** [1] - 9:23

**B**

**B.V** [3] - 1:4, 2:9, 2:11
**balance** [1] - 3:7
**BARRY** [1] - 1:18
**Barry** [2] - 2:17, 8:4
**based** [4] - 6:1, 6:15, 11:16, 13:21
**basis** [1] - 4:18
**Bayer** [4] - 10:18, 11:3, 12:17
**became** [1] - 10:24
**becomes** [1] - 5:8
**BEFORE** [1] - 1:2
**behalf** [5] - 2:8, 2:10, 2:12, 2:14, 2:18
**between** [1] - 13:6
**binding** [1] - 10:24
**BRADSHAW** [2] - 1:20, 2:14
**Bradshaw** [1] - 2:14
**briefing** [5] - 3:2, 4:13, 5:10, 12:10, 13:22
**briefly** [2] - 4:11, 12:23
**bring** [1] - 11:10
**BROWNING** [20] - 1:15, 2:8, 2:22, 2:25, 3:11, 3:16, 3:20, 4:1, 4:9, 4:13, 5:19, 5:23, 6:3, 6:11, 6:14, 7:2, 11:9, 12:23, 15:2, 15:6
**Browning** [1] - 2:8
**burden** [1] - 9:20

**C**

**cannot** [1] - 14:10
**case** [8] - 2:6, 3:13, 4:24, 6:15, 10:13, 10:18, 11:3, 12:16
**CCR** [2] - 1:23, 15:14
**certificate** [2] - 8:8, 8:23
**certify** [1] - 15:12
**Circuit** [3] - 10:9, 11:19, 12:4
**cite** [1] - 14:4
**civil** [1] - 9:9
**claim** [4] - 6:15, 10:3, 13:13
**claims** [5] - 3:23, 4:2, 6:7, 6:9, 9:11
**clear** [3] - 3:15, 6:12, 14:10
**clearly** [1] - 12:16
**Clerk** [1] - 8:10
**closing** [2] - 9:25, 10:7
**colleague** [1] - 6:23
**competent** [1] - 7:21
**complaint** [1] - 6:16
**compliant** [1] - 3:17
**comply** [3] - 5:22, 9:13, 11:1
**complying** [1] - 9:2
**concludes** [1] - 8:2
**conclusions** [2] - 14:3, 14:13
**consider** [1] - 3:4
**construction** [1] - 10:3
**contacted** [1] - 8:16
**control** [1] - 6:5
**controls** [1] - 7:8
**copy** [1] - 8:7
**CORP** [1] - 1:8
**correct** [7] - 3:19, 4:6, 4:10, 6:14, 9:15, 12:24, 15:12
**correctly** [1] - 13:20
**counsel** [4] - 4:17, 9:6, 13:17, 15:3
**couple** [3] - 9:24, 12:24, 14:16
**course** [3] - 4:5, 14:7, 14:21
**Court** [9] - 8:6, 9:19, 10:3, 10:13, 10:14, 11:1, 11:4, 12:9, 12:17
**COURT** [35] - 1:1, 2:4, 2:13, 2:16, 2:19, 2:24, 3:9, 3:15, 3:17, 3:24, 4:5, 4:12, 5:17, 5:20, 6:1, 6:10, 6:12, 6:25, 8:3, 8:10, 8:13, 8:20, 8:25, 9:6, 9:14, 9:16, 12:6, 12:20, 12:22, 13:25, 14:17, 14:20, 15:1, 15:5, 15:7
**Court's** [1] - 10:22
**courts** [1] - 3:4
**create** [1] - 11:25
**credible** [3] - 4:15, 7:11, 7:21
**criminal** [1] - 9:9
**cross** [1] - 11:11
**cross-examination** [1] - 11:11

**D**

**D.C** [2] - 1:16, 1:19
**damage** [1] - 9:11
**date** [1] - 4:14
**days** [1] - 14:17
**deciding** [1] - 3:4
**decision** [3] - 12:7, 12:8, 12:17
**declaration** [3] - 4:17, 7:13, 11:14
**DEFENDANT** [1] - 1:18
**Defendant's** [1] - 8:14
**defendants** [2] - 2:15, 2:18
**Defendants** [1] - 1:9
**delightful** [1] - 5:17
**denied** [3] - 10:9, 10:11, 10:14
**deny** [1] - 14:1
**discovery** [1] - 5:24
**discuss** [1] - 11:3
**discussed** [1] - 7:9

**dispute** [4] - 4:22, 6:4, 10:1, 13:1
**dissolution** [6] - 4:2, 4:3, 5:2, 5:4, 5:13, 11:2
**DISTRICT** [3] - 1:1, 1:1, 1:2
**divide** [1] - 5:16
**docket** [1] - 10:22
**document** [1] - 8:9
**documents** [1] - 13:8
**done** [2] - 12:10, 14:16
**down** [1] - 12:12
**Dr** [2] - 6:19, 10:5
**Drug** [1] - 9:10
**during** [2] - 9:23, 13:22

E

**e-mail** [1] - 8:17
**effective** [1] - 10:24
**effectively** [3] - 5:8, 6:22, 7:5
**either** [2] - 4:19, 13:18
**Elan** [1] - 10:18
**encroach** [2] - 3:23, 6:6
**entertain** [1] - 12:18
**entire** [1] - 11:16
**entitled** [3] - 3:3, 6:6, 15:13
**equities** [1] - 3:7
**established** [1] - 3:14
**establishes** [1] - 3:2
**evidence** [14] - 3:1, 3:21, 4:15, 4:24, 5:18, 6:24, 7:7, 7:11, 7:14, 7:18, 7:21, 8:14, 13:21
**exactly** [5] - 3:9, 5:3, 5:6, 8:20, 11:4
**examination** [1] - 11:11
**examples** [1] - 14:9
**except** [1] - 5:5
**exhibit** [1] - 8:11
**Exhibit** [2] - 8:12, 8:14
**exist** [1] - 13:2
**express** [1] - 3:9

F

**fact** [6] - 6:21, 10:5, 11:17, 12:1, 13:6, 13:19
**factors** [2] - 3:4, 3:5
**facts** [1] - 10:10
**FDA** [3] - 8:16, 8:18, 9:12
**Federal** [3] - 10:9, 11:19, 12:4
**FERRING** [1] - 1:4
**Ferring** [8] - 2:6, 2:9, 2:11, 2:12, 3:1, 3:2, 8:19, 9:20
**Ferring's** [2] - 3:22, 10:9
**few** [1] - 13:10
**file** [1] - 8:7
**filed** [2] - 10:24, 12:9
**filing** [3] - 8:8, 8:17, 8:23
**finally** [1] - 13:19
**findings** [4] - 10:3, 14:2, 14:4, 14:13
**fined** [1] - 9:4
**first** [1] - 15:3
**fix** [1] - 11:13
**focus** [2] - 14:3, 14:12
**follow** [1] - 14:22
**following** [1] - 3:20
**Food** [1] - 9:10
**FOR** [2] - 1:13, 1:18
**foregoing** [1] - 15:12
**form** [1] - 7:12
**forth** [2] - 10:4, 12:10
**forward** [2] - 7:17, 7:20
**four** [2] - 3:4, 3:5
**fringe** [1] - 10:6
**front** [2] - 7:22, 14:23
**furthermore** [1] - 11:22

G

**Gavarini** [4] - 7:12, 11:7, 11:9, 11:10
**given** [2] - 6:18, 7:15
**GOLOB** [17] - 1:18, 2:17, 8:4, 8:12, 8:15, 8:21, 9:3, 9:12, 9:15, 9:17, 11:10, 12:8, 12:21, 14:15, 14:19, 14:24, 15:9
**Golob** [2] - 2:18, 8:5
**grant** [1] - 3:5
**granted** [3] - 8:18, 8:24, 10:25
**greater** [1] - 13:11
**Griener** [3] - 1:23, 15:14, 15:14
**guess** [1] - 9:18

H

**hand** [1] - 8:9
**happy** [1] - 11:3
**harm** [15] - 3:6, 7:4, 7:10, 7:12, 7:14, 7:15, 11:6, 11:13, 11:14, 11:22, 11:25, 12:11, 12:13, 13:21
**harmed** [1] - 13:19
**harming** [1] - 11:21
**HASFORD** [2] - 1:15, 2:10
**Hasford** [2] - 2:10, 6:23
**hear** [1] - 6:21
**heard** [2] - 10:14, 11:4
**hearing** [3] - 6:19, 7:7, 8:11
**HEARING** [1] - 1:11
**heavy** [1] - 9:20
**Honor** [40] - 2:17, 2:22, 3:13, 3:14, 3:20, 4:10, 4:14, 4:19, 5:10, 5:19, 5:23, 6:3, 6:14, 6:17, 6:18, 6:20, 7:2, 7:11, 7:22, 7:25, 8:1, 8:4, 8:9, 8:15, 9:3, 9:18, 9:23, 10:8, 10:17, 11:6, 12:21, 12:23, 12:24, 13:1, 13:20, 13:24, 14:15, 14:24, 15:2, 15:6
**HONORABLE** [1] - 1:2
**hopefully** [1] - 10:21
**hundred** [2] - 5:4, 13:11

I

**immediate** [1] - 14:21
**important** [1] - 5:7
**importantly** [1] - 12:15
**imposes** [1] - 4:7
**INC** [1] - 1:7
**INC.-FLORIDA** [1] - 1:7
**individual** [1] - 5:11
**infringe** [2] - 3:25, 14:11
**infringement** [5] - 3:13, 6:5, 7:9, 7:16, 9:11
**infringes** [2] - 3:22, 9:8
**infringing** [1] - 3:18
**ingredient** [1] - 4:25
**injunction** [11] - 2:21, 3:3, 3:5, 3:10, 3:12, 8:11, 10:12, 11:20, 12:1, 12:5, 14:1
**interest** [2] - 3:8, 4:3
**internal** [1] - 8:16
**interpret** [1] - 8:25
**involves** [1] - 10:13
**irreparable** [11] - 3:6, 7:4, 7:10, 7:12, 7:14, 7:15, 11:6, 11:12, 11:13, 11:15, 13:21
**issue** [1] - 12:8

J

**JAMES** [1] - 1:20
**Jim** [1] - 2:14
**JONES** [1] - 1:2
**JUDGE** [1] - 1:2
**judgment** [4] - 10:11, 10:20, 12:18
**JUSTIN** [1] - 1:15
**Justin** [1] - 2:10

K

**knowledge** [1] - 4:17
**knows** [1] - 8:6

L

**LABORATORIES** [1] - 1:7
**last** [1] - 11:23
**Law** [4] - 1:13, 1:16, 1:18, 1:20
**law** [2] - 6:7, 10:25
**less** [6] - 4:4, 5:8, 5:9, 8:21, 13:5, 13:13
**level** [1] - 11:25
**likelihood** [4] - 3:6, 10:8, 10:15, 10:23
**limitation** [2] - 4:3, 4:8
**limitations** [1] - 4:2
**limiting** [1] - 9:1
**litigation** [1] - 5:24
**look** [2] - 13:4, 13:8
**looking** [2] - 5:14, 14:8

M

**Madam** [1] - 8:10
**mail** [1] - 8:17
**March** [4] - 4:14, 7:19, 8:7, 8:17
**Margaret** [2] - 1:23, 15:14
**mark** [1] - 8:11
**marked** [1] - 8:12
**market** [10] - 9:4, 9:22, 11:17, 11:20, 11:21, 11:24, 12:4, 12:11, 13:17, 13:20
**math** [1] - 5:17
**mathematics** [1] - 5:9
**matter** [3] - 10:20, 10:25, 15:13
**means** [2] - 11:13, 11:15
**merit** [1] - 12:16
**merits** [3] - 3:6, 10:16, 11:5
**milligrams** [7] - 5:1, 5:3, 5:6, 5:12, 5:14, 5:15
**minus** [1] - 5:1
**minutes** [2] - 4:3, 8:22
**modified** [1] - 13:6
**Molly** [1] - 2:12
**MOLLY** [1] - 1:13
**moment** [1] - 15:2
**Monday** [1] - 11:19
**months** [1] - 11:23
**morning** [4] - 2:4, 2:17, 2:25, 8:4
**MOTION** [1] - 1:11
**motion** [6] - 3:7, 8:23, 10:9, 10:12, 13:22, 14:5
**motions** [1] - 14:21
**move** [2] - 7:4, 10:19
**moved** [1] - 12:1
**MR** [37] - 2:8, 2:10, 2:14, 2:17, 2:22, 2:25, 3:11, 3:16, 3:20, 4:1, 4:9, 4:13, 5:19, 5:23, 6:3, 6:11, 6:14, 7:2, 8:4, 8:12, 8:15, 8:21, 9:3, 9:12, 9:15, 9:17, 11:9, 11:10, 12:8, 12:21, 12:23, 14:15, 14:19, 14:24, 15:2, 15:6, 15:9
**MS** [1] - 2:12
**must** [3] - 9:13, 11:1, 14:10

N

**need** [2] - 7:18, 13:4
**NEVADA** [2] - 1:1, 2:1
**Nevada** [4] - 1:8, 1:14, 1:21, 1:24
**never** [2] - 7:13, 12:1
**new** [1] - 13:2
**next** [1] - 7:4
**nonconforming** [1] - 9:7
**noninfringement** [3] - 7:21, 10:19, 10:20
**noninfringing** [4] - 4:23, 9:21, 12:3, 12:16

**noted** [1] - 11:1
**nothing** [1] - 13:13
**notice** [1] - 6:18
**number** [3] - 11:13, 11:16, 14:7

**O**

**OF** [2] - 1:1, 1:11
**offend** [1] - 14:10
**offending** [2] - 5:18, 14:9
**Official** [2] - 1:23, 15:15
**one** [4] - 4:13, 11:13, 14:8, 15:2
**open** [1] - 12:19
**opening** [1] - 7:6
**opine** [1] - 14:23
**opposition** [1] - 8:22
**order** [1] - 2:21
**outside** [3] - 6:8, 10:17, 11:2

**P**

**paper** [3] - 4:16, 12:5, 12:9
**papers** [1] - 8:23
**part** [1] - 13:3
**parties'** [1] - 3:2
**party** [2] - 3:7, 11:18
**pass** [1] - 15:3
**patent** [15] - 3:13, 3:18, 3:22, 3:23, 4:2, 6:7, 6:9, 9:8, 9:10, 10:2, 10:13, 10:18, 11:2, 14:11
**patents** [2] - 9:25, 10:4
**PAUL** [1] - 1:15
**Paul** [1] - 2:8
**penalties** [1] - 9:9
**pending** [5] - 3:12, 12:5, 12:6, 12:8
**percent** [20] - 4:4, 5:1, 5:4, 5:8, 5:9, 5:12, 5:14, 5:16, 6:21, 6:22, 8:22, 12:12, 13:1, 13:3, 13:5, 13:7, 13:11, 13:12, 13:14
**person** [2] - 6:20, 8:16
**personal** [1] - 4:17
**phone** [1] - 6:20
**phonetic** [1] - 7:13
**PI** [1] - 7:7
**pieces** [1] - 4:16
**place** [1] - 4:21
**plaintiff** [3] - 1:5, 2:9, 2:11
**PLAINTIFF** [1] - 1:13
**plus** [1] - 5:1
**point** [4] - 7:4, 7:9, 9:24, 10:2
**points** [1] - 12:25
**position** [1] - 4:9
**possible** [2] - 10:21, 12:19
**potency** [1] - 13:7
**preliminary** [7] - 2:21, 3:3, 3:5, 3:10, 3:11, 8:11, 14:1
**prepare** [2] - 14:2, 14:13
**present** [1] - 14:5
**presented** [1] - 3:2
**pretty** [1] - 14:10
**primary** [2] - 14:3, 14:7
**problems** [1] - 11:12
**proceed** [1] - 2:23
**proceedings** [1] - 15:12
**process** [1] - 4:6
**produce** [1] - 9:7
**produced** [1] - 5:25
**product** [8] - 5:18, 9:1, 9:7, 9:20, 10:6, 12:3, 12:16, 13:6
**products** [3] - 5:25, 9:5, 14:9
**properly** [1] - 10:15
**proposed** [1] - 14:13
**proposing** [2] - 3:7, 14:2
**proven** [1] - 7:24
**public** [1] - 3:8
**pursue** [1] - 14:20
**put** [2] - 10:10, 10:11

**Q**

**questions** [1] - 8:1
**quickly** [3] - 5:10, 10:21, 12:19

**R**

**RDR** [2] - 1:23, 15:14
**reason** [2] - 5:7, 13:23
**received** [1] - 8:14
**recognized** [1] - 12:2
**reconsider** [1] - 13:23
**record** [5] - 3:14, 7:7, 14:5, 15:12
**regard** [2] - 14:4, 14:14
**regulatory** [1] - 8:16
**related** [2] - 4:24, 10:13
**released** [2] - 5:15, 13:14
**relief** [2] - 6:16, 14:21
**remarks** [1] - 8:2
**renders** [2] - 4:21, 4:23
**Reno** [4] - 1:8, 1:14, 1:21, 1:24
**RENO** [1] - 2:1
**repair** [1] - 11:14
**Reported** [1] - 1:23
**Reporter** [2] - 1:23, 15:15
**resolution** [1] - 3:12
**resolve** [1] - 10:21
**resolving** [1] - 12:19
**respect** [3] - 4:20, 10:4, 10:10
**respectfully** [2] - 3:1, 4:19
**respond** [1] - 4:10
**responded** [2] - 4:5, 7:13
**restraining** [1] - 2:20
**results** [3] - 5:4, 13:9, 13:10
**revisit** [1] - 2:20
**revisiting** [1] - 2:6
**REZAC** [1] - 1:13
**Rezac** [1] - 2:12
**REZAK** [1] - 2:12
**rights** [1] - 3:22
**ROBERT** [1] - 1:2
**ruled** [1] - 11:19

**S**

**sales** [3] - 3:12, 3:17, 3:18
**sample** [1] - 13:12
**samples** [1] - 5:25
**sanctioned** [1] - 9:4
**seated** [1] - 2:5
**second** [1] - 11:25
**secondly** [2] - 4:20, 13:16
**see** [2] - 5:14, 8:15
**seeking** [3] - 3:10, 3:11, 6:16
**sense** [1] - 5:5
**short** [1] - 6:18
**showed** [1] - 10:6
**shown** [1] - 14:9
**shows** [3] - 8:8, 8:23, 8:24
**sic** [1] - 7:20
**similar** [1] - 10:4
**single** [2] - 13:9, 13:10
**small** [1] - 13:12
**sole** [1] - 11:18
**sometimes** [1] - 5:4
**South** [1] - 1:24
**specifically** [1] - 14:4
**specification** [4] - 9:2, 9:21, 10:16, 11:2
**specifications** [8] - 3:23, 6:5, 6:6, 6:8, 6:11, 13:4, 13:5, 13:15
**standard** [1] - 9:19
**statements** [1] - 14:6
**STATES** [1] - 1:1
**status** [2] - 4:7, 13:16
**stayed** [5] - 11:19, 12:5, 12:6, 12:9, 12:10
**still** [3] - 11:20, 12:4, 12:11
**Street** [1] - 1:24
**stringent** [1] - 9:19
**stuff** [1] - 10:14
**subject** [3] - 9:9, 9:24, 13:3
**submission** [1] - 14:6
**submit** [5] - 4:19, 5:16, 7:17, 10:17, 13:21
**submits** [1] - 3:1
**submitted** [6] - 4:13, 7:11, 11:7, 13:9, 13:22, 15:4
**success** [6] - 3:6, 10:8, 10:15, 10:23, 11:5, 12:15
**sudden** [1] - 12:2
**suggested** [1] - 6:2
**suggesting** [1] - 5:21
**summary** [2] - 10:19, 12:18
**supplement** [4] - 8:18, 8:20, 8:21, 10:24
**supplemental** [1] - 9:2
**support** [1] - 4:15
**sworn** [1] - 7:1

**T**

**tablet** [6] - 5:1, 5:3, 5:5, 5:11, 13:9, 13:11
**telephonic** [1] - 6:25
**ten** [1] - 14:17
**test** [3] - 5:4, 13:9, 13:10
**tested** [1] - 13:9
**testimony** [3] - 6:21, 6:23, 7:1
**testing** [2] - 5:2, 5:13
**THE** [36] - 1:2, 1:13, 2:4, 2:13, 2:16, 2:19, 2:24, 3:9, 3:15, 3:17, 3:24, 4:5, 4:12, 5:17, 5:20, 6:1, 6:10, 6:12, 6:25, 8:3, 8:10, 8:13, 8:20, 8:25, 9:6, 9:14, 9:16, 12:6, 12:20, 12:22, 13:25, 14:17, 14:20, 15:1, 15:5, 15:7
**themselves** [1] - 13:8
**theoretical** [3] - 5:20, 6:1, 6:4
**therefore** [2] - 3:23, 7:15
**they've** [4] - 4:5, 4:9, 7:19, 12:12
**thinking** [1] - 7:24
**three** [2] - 5:25, 11:12
**today** [2] - 7:19, 14:6
**transcript** [1] - 15:12
**TRANSCRIPT** [1] - 1:11
**trial** [3] - 4:24, 9:23, 10:5
**TRO** [1] - 10:15
**trying** [2] - 11:14, 12:3
**two** [2] - 9:25, 11:16

**U**

**under** [5] - 3:19, 5:20, 9:9, 12:16, 14:9
**undisputed** [2] - 3:21, 4:24
**UNITED** [1] - 1:1
**unknown** [1] - 13:18
**unless** [1] - 8:1
**unrebutted** [6] - 7:5, 7:8, 7:14, 7:16, 7:17, 13:21
**up** [4] - 5:11, 8:9, 13:11, 14:22

**V**

**variance** [4] - 4:25, 5:8, 9:7, 13:3
**versus** [1] - 2:6
**Virginia** [1] - 1:24
**vs** [1] - 1:6

**W**

**wants** [1] - 12:17
**Washington** [2] - 1:16, 1:19
**Watson** [9] - 11:17, 11:20, 11:23, 12:1,

12:4, 12:10, 12:13, 13:16
**WATSON** [1] - 1:7
**WEDNESDAY** [1] - 2:1
**week** [1] - 14:17
**weeks** [2] - 9:24, 14:16
**whole** [1] - 13:5
**Williams** [2] - 6:19, 10:5
**words** [1] - 3:15

## Y

**years** [2] - 5:25, 13:10
**yesterday** [2] - 8:8, 8:19